616 F.2d 1342
 24 Wage & Hour Cas. (BN 735, 89 Lab.Cas. P 33,912
 Hewett M. REEVES, Plaintiff-Appellant Cross-Appellee,
v.
INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION,
Defendant-Appellee Cross-Appellant,
Ray Marshall, Secretary of Labor, United States Department
of Labor,Intervenor-Appellant Cross-Appellee.
 No. 78-1286.
 United States Court of Appeals,
Fifth Circuit.
 May 15, 1980.
 
 Leroy H. Scott, Jr., Shreveport, La., for plaintiff-appellant, cross-appellee.
 Donald S. Shire, Associate Sol., U. S. Dept. of Labor, Mary Ann Bernard, Washington, D. C., for intervenor-appellant cross-appellee.
 Bowling, Brackhahn & Jackson, Memphis, Tenn., Cook, Clark, Egan, Yancey & King, Sidney E. Cook, Dewey Corley, Shreveport, La., Gordon E. Jackson, Michael R. Forman, Memphis, Tenn., for defendant-appellee cross-appellant.
 Appeals from the United States District Court for the Western District of Louisiana.
 Before GOLDBERG, FRANK M. JOHNSON, Jr. and HATCHETT, Circuit Judges.
 HATCHETT, Circuit Judge.
 
 
 1
 An employee, Hewett M. Reeves, instituted this action in September, 1967, to recover unpaid wages and liquidated damages allegedly due him from International Telephone and Telegraph Corporation (IT&T) under the Fair Labor Standards Act (Act), 29 U.S.C. §§ 201-219. The Secretary of Labor (Secretary) subsequently intervened under section 11(a) and section 17 of the Act. By appeal and cross-appeal, the parties seek review of the district court's judgment ordering reinstatement and awarding $96,245.74 to claimant for unpaid wages, liquidated damages, back pay and attorney's fees. We affirm the judgment on liability and reinstatement, but increase the damages awarded for back pay and attorney's fees.
 
 FACTS
 
 2
 Nature of Employment.
 
 
 3
 In May, 1965, Reeves was employed by IT&T as a microwave field engineer at a compensation rate of $8,400 per year.[1] In that capacity, he traveled to contract sites in remote areas of the world installing and testing microwave equipment. In conducting his duties, Reeves followed prescribed procedures and standards in the utilization of complex measuring devices to ensure that equipment installed performed within a predetermined range of tolerance. It was Reeves's responsibility, as an employee whose primary duties were performed outside the supervisory presence of his employer, to maintain and report hourly work records. These records were maintained primarily for billing purposes and, as claimant contends, to form the basis for an accurate calculation of compensable overtime hours.
 
 
 4
 During his period of employment, Reeves regularly lodged complaints with supervisors and colleagues over what he considered to be a failure on IT&T's part to adequately compensate him for overtime hours reported. On August 28, 1967, Reeves formalized his grievance by filing a complaint with the Wage and Hour Division of the Department of Labor. The following day, August 29, 1967, Reeves was terminated from his employment at IT&T.
 
 
 5
 Procedural History.
 
 
 6
 Reeves instituted this action with his timely complaint in federal court charging IT&T with unlawful discharge under section 15(a)(3)[2] and requesting unpaid wages and liquidated damages computed from an estimated average workweek of approximately 75 hours. Claiming that Reeves was an exempt employee working for the company in a bona fide executive, administrative, or professional capacity as described in 29 U.S.C. § 213(a)(1),[3] IT&T denied the charges.
 
 
 7
 On April 27, 1973, the district court ruled against IT&T on the exemption question and appointed a United States Magistrate to take evidence and make recommendations on the quantum issue. Reeves v. International Telephone & Telegraph, 357 F.Supp. 295 (W.D.La.1973). In the opening hearings before the magistrate, IT&T moved to dismiss Reeves's action under section 15(a)(3) on the grounds that the court lacked jurisdiction under the Act to entertain a private civil action to recover damages for discharge under that provision. In written support of its motion, IT&T maintained that only the Secretary of Labor was authorized under the Act to seek relief. Hearings before the magistrate were stayed, pending a ruling by the district court on the motion to dismiss. That ruling came on July 26, 1973, when the district court denied the motion "as having been filed too late and having further delayed the trial of this case." Four weeks later, the Secretary petitioned for intervention under section 11(a) of the Act. The Secretary filed with the petition a complaint seeking equitable redress on behalf of Reeves for employer violations under section 15(a)(3). The district court granted the motion for intervention, and quantum hearings before the magistrate were reinstituted.
 
 
 8
 Magistrate's Report and District Court Judgment.
 
 
 9
 In his quantum report filed on September 9, 1977, the magistrate concluded that IT&T unlawfully discharged Reeves and willfully withheld overtime wages during the period of his employment. Accordingly, he recommended a judgment immediately reinstating Reeves and awarding him appropriate back pay, unpaid wages and attorney's fees. Calculating the award based on a 60 hour workweek at an average straight time hourly wage of $4.31 per hour, the magistrate determined that Reeves was entitled to $22,164.28 as unpaid wages and liquidated damages, and $6,134.48 back pay and diminished earnings.[4] An additional $25,000 for attorney's fees brought the magistrate's total recommended award to $53,298.76. Reimbursed expenses were disallowed.
 
 
 10
 The district court increased the back pay award to reflect the amount owed for years 1967 through 1974 ($39,081.46)[5] and increased the attorney's fees to $35,000. In all other respects the magistrate's recommendations were adopted. Immediate reinstatement was ordered and damages for Reeves were assessed at $96,245.74.[6] Each party finds error in this judgment.
 
 ISSUES
 
 11
 IT&T contends that the district court erred in (1) asserting jurisdiction under the Act; (2) adjudicating Reeves's non-exempt status; (3) finding an unlawful discharge; (4) calculating damages and attorney's fees; and (5) excluding key defense witnesses. Reeves contests the adequacy of damages awarded on three levels: (a) quantum of attorney's fees; (b) denial of reimbursement expenses; and (c) computation based on a 60 hour workweek. The Secretary defends jurisdiction and urges a "make whole" back pay award calculated on the basis of a higher projected income than that utilized by the district court. We will address the issues in the sequence provided by IT&T, discussing the Secretary's and Reeves's claims as they logically present themselves.I. JURISDICTION
 
 
 12
 IT&T rests its jurisdictional challenge on the following argument:[7]
 
 
 13
 (1) In 1967, when the claimant instituted this suit, the Act did not authorize a private right of action for damages for the wrongful discharge of an employee. Standing to raise the section 15(a)(3) violation rested solely with the Secretary of Labor, who did not file suit at that time. Powell v. Washington Post Co., 267 F.2d 651 (D.C.Cir.1959).
 
 
 14
 (2) From the earliest pre-trial stipulation in 1969, the employer has challenged the court's jurisdiction over the unlawful discharge claim. Before April, 1973, the district court limited the scope of his judicial inquiry to a resolution of the exemption issue. For this reason, the employee's challenges to jurisdiction were not lodged in a formal motion to dismiss until after that date. The district court erred in not dismissing the unlawful discharge action in response to the challenges set forth in the pre-trial stipulations and later in the motion to dismiss.
 
 
 15
 (3) The Secretary first attempted to intervene in August, 1973, four weeks after IT&T moved to dismiss the action and nearly six years after the original complaint was filed. The Secretary was barred from intervening at this time by virtue of the statute of limitations governing actions under section 17 of the Act. Section 17 adopts as a limitation on injunctive proceedings the statutory time bar imposed in section 6 of the Portal-to-Portal Act, 29 U.S.C. §§ 251-262. That section limits Secretarial enforcement to within two years after the cause of action accrued, or within three years if the violation was willful. In either case, the Secretary's six year delay in proceeding to enforce the Act was time barred by statute. Even discounting the statute's effect, the Secretary was prohibited by the doctrine of laches from intervening some six years after suit was filed.
 
 
 16
 (4) Because intervention was untimely, the Secretary's action could not create an independent basis for jurisdiction over the unlawful discharge claim.
 
 
 17
 (5) With no private right of action available and with no legitimate basis for Secretarial intervention, the district court was without jurisdiction and should have dismissed the unlawful discharge claim in 1973.
 
 
 18
 (6) The district court's wrongful failure to dismiss in 1973 cannot form the basis for jurisdiction in 1977. Congressional creation of a private right of action in 1977 for recovery under section 15(a)(3) cannot form the basis for jurisdiction. The proposition that a court must apply whatever law is in effect at the time a decision is rendered is inapplicable here. Although the decision was rendered after the amendment creating the private right of action, a correct ruling in 1973 would have forever foreclosed the unlawful discharge claim. The claimant should not be rewarded for the court's erroneous ruling in 1973, which kept viable an otherwise illegitimate claim.
 
 
 19
 While IT&T's argument is an appealing one, its analysis does not withstand close scrutiny. First, the record does not support IT&T's contention that jurisdiction over the unlawful discharge was challenged in pre-trial stipulations from 1969 to 1971.[8] The only basis for IT&T's position is the general claim appearing in each stipulation that: "plaintiff has no remedy for his discharge." We do not view this as a challenge, informal or otherwise, to Reeves's jurisdictional right to bring his claim for unlawful discharge before the district court. Our reluctance to so construe the phrase is further justified by the recognition that each of the stipulations proclaims that no jurisdictional questions were raised by either Reeves or IT&T.
 
 
 20
 The jurisdictional challenge to Reeves's unlawful discharge claim was first presented to the district court in the motion to dismiss filed on July 23, 1973. IT&T conceded at oral argument that only when a claim is adequately raised does a trial court have a duty to rule on the challenge. We conclude that the district court had no duty to address the jurisdictional point until after the motion to dismiss was filed in July, 1973.
 
 
 21
 Having made this determination, we reject IT&T's claim that the Secretary's intervention was untimely. Rule 24(b) of the Federal Rules of Civil Procedure permits "timely" intervention where an applicant's claims contain common questions of law or fact with the main action. By the express terms of Rule 24, motions for permissive intervention are addressed to the sound discretion of the district court. United States v. Marion County School District, 590 F.2d 146 (5th Cir. 1979); United States v. Allegheny-Ludlum Industries, Inc., 553 F.2d 451 (5th Cir. 1977). We will not overturn a determination on intervention absent an abuse of that discretion. See, Henry v. First National Bank of Clarksdale, 595 F.2d 291 (5th Cir. 1979); United States v. Marion County School District; Korioth v. Briscoe, 523 F.2d 1271 (5th Cir. 1975). IT& T insists that by permitting intervention nearly six years after the action was instituted, the district court abused its discretion. An "absolute measure of timeliness," however, is of little significance in determining the propriety of intervention under Rule 24(b). Stallworth v. Monsanto Co., 558 F.2d 257 (5th Cir. 1977); Diaz v. Southern Drilling Corp., 427 F.2d 1118 (5th Cir. 1970). We have before recognized that intervention is permissible "months or even years after the original filing of the suit 'where the substantial litigation of the issues had not been commenced when the motion to intervene was filed.' " Smith Petroleum Service, Inc. v. Monsanto Chemical Co., 420 F.2d 1103, 1115 (5th Cir. 1970). Moreover, in exercising its discretion the district court must "put into the balance against the movant its prior opportunities to assert its position." United States v. Marion County School District, at 148. In this case, the Secretary moved to intervene shortly after the question of Reeves's standing as a private party to assert the unlawful discharge claim was put in issue by IT&T's formal motion to dismiss. IT&T has not demonstrated that the intervention caused undue delay or prejudice in the federal action. McDonald v. E. J. Lavino Co., 430 F.2d 1065 (5th Cir. 1970). We conclude that the application for intervention was timely under Rule 24(b), Fed.R.Civ.P.
 
 
 22
 IT&T also asserts that the Secretary was barred from filing his complaint in intervention under the statutory limitations period set forth in section 6 of the Portal-to-Portal Act and made applicable in 29 U.S.C. § 217. These sections place a maximum three year limitations period on suits to enforce any cause of action "for unpaid minimum wages, unpaid overtime compensation, or liquidated damages" under the Act. Unexcelled Chemical Corporation v. United States, 345 U.S. 59, 73 S.Ct. 580, 97 L.Ed. 821 (1953). The Secretary's complaint in intervention was limited to the enforcement of a cause of action for Reeves's unlawful discharge under section 15(a)(3) of the Act. He did not seek redress for unpaid overtime compensation or liquidated damages. The limitation provision of section 255 therefore does not apply to the Secretary's action in equity to enforce section 15(a)(3) of the Act. Nor does the doctrine of laches prohibit the Secretary's intervention. That doctrine does not apply as a defense against agency action to vindicate public rights. Weiszmann v. District Engineer, U. S. Army Corps of Engineers, 526 F.2d 1302 (5th Cir. 1976); United States v. State of Florida, 482 F.2d 205 (5th Cir. 1973); Chromcraft Corp. v. EEOC, 465 F.2d 745 (5th Cir. 1972).
 
 
 23
 Finally, we reject IT&T's contention that the 1977 amendments did not extend to Reeves a private right of action for unlawful discharge. Private actions for discriminatory discharge were denied in this circuit prior to the amendment to section 216(b). See, Martinez v. Behring's Bearings Service, Inc., 501 F.2d 104 (5th Cir. 1974). In 1977, however, that section was amended to authorize private suits for unlawful discharge "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." The question we must answer is whether passage of the amendment during the pending action operated to extend to Reeves a private right of action which he did not have at the outset of his suit. In resolving the issue, we find persuasive the reasoning of the Sixth Circuit in Bush v. State Industries, Inc., 599 F.2d 780 (6th Cir. 1979). In Bush, an employee's pre-amendment action for retaliatory discharge was dismissed in district court for failure to state a claim upon which relief could be granted. Subsequent to the filing of Bush's appeal with the circuit court, Congress amended the Act to provide a private right of action for violations of section 15(a)(3). Citing the "well-established principle" that, barring manifest injustice or express statutory proscription, "a court is to apply the law in effect at the time it renders its decision," the court held the 1977 amendments applicable to Bush's pending case. Bush v. State Industries, Inc., at 786; Bradley v. School Board of the City of Richmond, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). The court in Bush summarized its holding as follows:
 
 
 24
 When § 16(b) of the Act was amended, subsequent to the filing of this action by Bush, it created a private cause of action for enforcement of the rights protected by § 15 of the Act. Applying the law in effect at the time of our decision, we hold that Bush has an express right to maintain this cause of action. Thus, any question as to whether an implied right of action existed was mooted by the 1977 amendments to the Act.
 
 
 25
 599 F.2d at 787.
 
 
 26
 We apply the same rationale to hold that Reeves is entitled to seek redress under section 15(a)(3), where the Act was amended during the pendency of the suit to create a private right of action under section 16(b).[9] We further observe, as did the court in Bush, that amendments such as those to section 16(b), which are procedural and affect only remedies, are generally applicable to pending cases. Bush v. State Industries, Inc.; Mahroom v. Hook, 563 F.2d 1369 (9th Cir. 1977); United States v. Blue Sea Line, 553 F.2d 445 (5th Cir. 1977); see Pedreyra v. Cornell Prescription Pharmacies, Inc., 465 F.Supp. 936 (D.C.Colo.1979).II. EXEMPTION
 
 
 27
 For the reasons set forth in the district court's thorough analysis on this issue, we reject IT&T's claim that Reeves should have been adjudicated an exempt employee under 29 U.S.C. § 213(a)(1). See, Reeves v. International Telephone & Telegraph Corp., 357 F.Supp. 295 (W.D.La.1973).
 
 III. UNLAWFUL DISCHARGE
 
 28
 We find adequate evidence in the record to support the district court's determination that Reeves was discharged in retaliation for the filing of his complaint for alleged overtime violations with the Department of Labor. During his employment Reeves had complained regularly to supervisors and colleagues about not being properly compensated for overtime work. In 1967, IT&T established a policy prohibiting payment, including compensation at straight time rates, for overtime work. Although Reeves had been given excellent evaluations and fitness reports,[10] IT&T discharged him for "poor performance" the day after he lodged his complaints with the Wage and Hour Division of the Department of Labor. The record shows that IT&T had been apprised of Reeves's wage complaint with the Department of Labor. Having reviewed the factual basis for the finding of unlawful discharge we have no definite and firm conviction that a mistake was committed. We therefore affirm on this issue. Rule 52(a), Fed.R.Civ.P., Inter-Cities Navigation Corp. v. United States, 608 F.2d 1079 (5th Cir. 1979); Stegmaier v. Trammell, 597 F.2d 1027 (5th Cir. 1979).
 
 IV. DAMAGES AWARD
 
 29
 Unpaid Wages.
 
 
 30
 Under the Act, an employee who brings suit for unpaid overtime compensation bears the burden of proving, with definite and certain evidence, that he performed work for which he was not properly compensated. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); Marshall v. Dallas Independent School District, 605 F.2d 191 (5th Cir. 1979); Johnson v. Dierks Lumber & Coal Co., 130 F.2d 115 (8th Cir. 1942). Inaccurate wage and hour information, however, is not always fatal to a claim for minimum wage or overtime compensation under the Act. Where the inaccuracy is due to the employer's failure to keep adequate records as required by statute,[11] imprecise evidence on quantum can provide a "sufficient basis" for damages. Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 687, 66 S.Ct. at 1192; Marshall v. Mammas Fried Chicken, Inc., 590 F.2d 598 (5th Cir. 1979); Hodgson v. Jones, 434 F.2d 1061 (5th Cir. 1970). Under these circumstances, we have "in effect ordered the fact finder to do the best he could in assessing damages." Mitchell v. Riley, 296 F.2d 614, 616 (5th Cir. 1961). As the Supreme Court observed in Anderson v. Mt. Clemens Pottery Co.:The solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.
 
 
 31
 328 U.S. at 687-688, 66 S.Ct. at 1192.
 
 
 32
 The unpaid wages awarded by the fact finder in this case reflect a conscientious adherence to the rule enunciated in Anderson v. Mt. Clemens. The record supports the magistrate's finding that IT&T did not keep adequate records and that employees were ordered to report incomplete and deflated figures on overtime hours. Moreover, IT&T failed to produce any pertinent records in accordance with discovery orders for certain periods in 1967.
 
 
 33
 Reeves introduced what he termed a "running total" of hours worked that he apparently kept in his mind during his employment. According to Reeves, he worked approximately 3100 uncompensated hours for IT&T. From this figure, Reeves estimates an average workweek of 74.5 hours. Reeves first testified to the running total in 1973. At that time, he conceded that the totals corresponded to the rough computations of his subconscious mind. Expressly cognizant of his duty under the circumstances to premise an award "upon as close an approximation as possible," the fact finder based his calculations on an average workweek of 60 hours.[12] We are satisfied that the 60 hour workweek represents a fair and "just" approximation under the facts presented and within the guidelines for determination observed in other inadequate company records cases. See, Anderson v. Mt. Clemens; Mitchell v. Riley; Mitchell v. Mitchell Truck Line, Inc., 286 F.2d 721 (5th Cir. 1961). For this reason, we reject Reeves's and IT&T's claim that the resulting unpaid overtime award was clearly erroneous. See, Weisel v. Singapore Joint Venture, Inc., 602 F.2d 1185 (5th Cir. 1979); Bunn v. Central Realty of Louisiana, 592 F.2d 891 (5th Cir. 1979).
 
 
 34
 Liquidated Damages.
 
 
 35
 Citing its alleged good faith belief that Reeves was an exempt employee under 29 U.S.C. § 213(a)(1), IT&T argues that there is no basis for the additional assessment of liquidated damages under section 216(b) of the Act. We disagree. Section 11 of the Portal-to-Portal Act, imposes upon an employer seeking to escape liquidated damages the plain and substantial burden of proving that its violation was "both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." Barcellona v. Tiffany English Pub. Inc., 597 F.2d 464, 468 (5th Cir. 1979). IT&T has not offered sufficient evidence to demonstrate that its failure to pay overtime wages in accordance with the Act was in reasonable good faith. As decisions have shown, the presumption of willfullness stands, absent positive and compelling proof of good faith. It is not enough, for instance, to plead and prove ignorance of the wage requirements. Knowledge will generally be imputed to the offending employer. Marshall v. A & M Consolidated Independent School District, 605 F.2d 186 (5th Cir. 1979). Nor does the complete ignorance of the possible applicability of the Act shield the employer from liability for liquidated damages. Coleman v. Jiffy June Farms, Inc., 458 F.2d 1139 (5th Cir. 1972). Good faith requires some duty to investigate potential liability under the Act. Barcellona v. Tiffany English Pub, Inc.
 
 
 36
 Lack of good faith is demonstrated when an employer "knows, or has reason to know, that his conduct is governed by the (Act)." Brennan v. Heard, 491 F.2d 1, 3 (5th Cir. 1974). Because we find substantial evidence to conclude that IT&T "knew or suspected that (its) actions might violate the (Act)," we uphold the district court's award of liquidated damages.[13] Coleman v. Jiffy June Farms, at 1142; Pearce v. Wichita County, City of Wichita Falls, Texas, Hospital Board, 590 F.2d 128 (5th Cir. 1979).
 
 
 37
 Back Pay Award.
 
 
 38
 Reeves decries the failure of the district court to add to his projected annual earnings an amount equivalent to the $980 per month he received as reimbursed expenses during his employment period at IT&T. According to Reeves, reimbursements constitute recoverable wages under 29 U.S.C. § 203(m). That section defines "wages" to include the reasonable cost of furnishing board, lodging, or other facilities if they are customarily furnished by the employer to his employees. We construe this section to apply to employer furnished facilities, and not to reimbursed out-of-pocket personal expenses incurred by employees during their business travels. 29 U.S.C. § 207(e)(2).[14]
 
 
 39
 In calculating annual earnings, the court based its figure of $15,683.20 on Reeves's average hourly rate ($4.31) during his employment with IT&T. The Secretary argues that the calculation should have been based on the hourly wage Reeves was making upon termination. The Secretary also asserts that the back pay award is inadequate because the district court failed to consider probable pay increases for the years 1967-1975.
 
 
 40
 We agree with the Secretary that in order to reasonably restore the employee "to the same situation he would have occupied if he had not been discharged," the award must be based on the rate of pay Reeves was receiving upon termination. Goldberg v. Bama Manufacturing Corp., 302 F.2d 152, 156 (5th Cir. 1962). The district court did not abuse its discretion, however, in refusing to consider possible pay increases from 1967 to 1975. Because of the speculative nature of that determination, we believe it rested within the sound exercise of the district court's discretion "to decide what measure of damages is appropriate." Id. at 156; Mitchell v. Robert De Mario Jewelry, Inc., 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960); Mitchell v. Goodyear Tire & Rubber Co., 278 F.2d 562 (8th Cir. 1960).
 
 
 41
 With an average hourly rate of $4.57, the back pay award is increased to $46,620.65. Section 16(b) of the Act now authorizes an additional equal amount as liquidated damages, bringing the total back pay and liquidated damages award to $93,241.30.
 
 
 42
 Reinstatement.
 
 
 43
 IT&T argues that reinstatement is a remedy "wholly outside the purview of the Fair Labor Standards Act." As the Supreme Court observed in Robert De Mario Jewelry, however, reinstatement and reimbursement may properly be combined to provide a complete judicial remedy, where an employee has been the victim of an unlawful discharge under section 215(a)(3). See, Goldberg v. Bama Manufacturing Corporation. Reinstatement is an appropriate remedy for unlawful discharge under the Act.
 
 
 44
 Attorney's Fees.
 
 
 45
 Section 16(b) of the Act provides that in any action successfully brought under its provisions, the court shall "allow a reasonable attorney's fee to be paid by the defendant." In accordance with this section, the district court awarded attorney's fees in the amount of $35,000. According to Reeves, this sum is woefully inadequate to properly compensate his attorney for the nearly 3,000 hours he claims to have spent on the case throughout its thirteen year federal court history. Reeves argues that his attorney is entitled to at least $50 an hour, an amount bringing his total attorney's fee claim to $150,000. We find no basis upon which to alter the district court's award. The attorney's fee determination rests in the sound discretion of the district court and will not be overturned in the absence of abuse. Baxter v. Savannah Sugar Refining Corp., 495 F.2d 437 (5th Cir. 1974); Montalvo v. Tower Life Building, 426 F.2d 1135 (5th Cir. 1970). Although it is well-established that a district court need not take evidence concerning the value of attorney's services, the fact finder considered evidence presented by Reeves's attorneys on the length and complexity of their representation. Montalvo v. Tower Life Building; Day & Zimmerman, Inc. v. Reid, 168 F.2d 356 (8th Cir. 1948); Campbell v. Green, 112 F.2d 143 (5th Cir. 1940). As the magistrate's recommended order illustrates, the determination rested on factors recognized as critical in the assessment of attorney's fees in Johnson v. Georgia Highway Express, 488 F.2d 174 (5th Cir. 1974). We have recently recognized the applicability of the Johnson guidelines in a non-Title VII setting. Piambino v. Bailey, 610 F.2d 1306 (5 Cir. 1980). The district court entered its award after considering the time and labor required, the complexity involved, and the skill necessary to properly perform the services needed. See, Johnson, at 718-719. As we observed in Montalvo, "(a) trial court has firsthand knowledge of the proceedings" and is in a uniquely qualified position to "place a value on (the attorney's) services." 426 F.2d at 1150. We affirm the district court's $35,000 ward of attorney's fees.
 
 
 46
 We think an additional fee of $5,000 for this appeal is merited, and increase the award to $40,000 in accordance with our authority to make such an assessment. See Montalvo; Bable v. T. W. Phillips Gas & Oil Co., 287 F.2d 21 (3rd Cir. 1961); Holtville Alfalfa Mills, Inc. v. Wyatt, 230 F.2d 398 (9th Cir. 1955).
 
 
 47
 Conclusion.
 
 
 48
 We summarize the damages award as redetermined by this decision as follows:
 
 
 49
 Straight time and overtime owed by
 defendant to plaintiff, plus
 liquidated damages $22,164.28
Back pay owed by defendant to
 plaintiff for years 1967 through
 1974, plus liquidated damages 93,241.30
Attorney's fee 40,000.00
 -----------
Total award $155,405.58
 
 V. EXCLUSION OF CERTAIN WITNESSES
 
 50
 The record discloses that on August 22, 1973, counsel for IT&T met for three hours with at least eleven prospective witnesses and discussed the case in preparation for testimony at the quantum hearing. The meeting and discussion constituted a direct and flagrant violation of a previously entered sequestration and separation order. The determination as to whether a violating witness shall be permitted to testify "is generally left to the sound discretion of the trial court." United States v. Suarez, 487 F.2d 236, 238 (5th Cir. 1973); United States v. Moriarty, 497 F.2d 486 (5th Cir. 1974). "(P)articular circumstances" support exclusion of testimony where the violation occurred with the "consent, connivance, procurement or knowledge" of counsel. Holder v. United States, 150 U.S. 91, 92, 14 S.Ct. 10, 37 L.Ed. 1010 (1893); Braswell v. Wainwright, 463 F.2d 1148, 1156 (5th Cir. 1972); United States v. Schaefer, 299 F.2d 625 (7th Cir. 1962). In light of the willful nature of the violation on the part of the witnesses and counsel, we do not overturn the district court's order prohibiting any testimony from the violating witnesses. Holder v. United States; United States v. Torbert, 496 F.2d 154 (9th Cir. 1974); United States v. Eastwood, 489 F.2d 818 (5th Cir. 1973).
 
 
 51
 The district court judgment for immediate reinstatement is AFFIRMED, and the damages award is increased in accordance with this decision.
 
 
 
 [1]
 Reeves also received reimbursements averaging $980 per month for travel, lodging, eating and other personal expenses incurred while on business with the company
 
 
 [2]
 29 U.S.C. § 215(a)(3) (§ 15(a)(3) of the Act) provides as follows:
 (a) After the expiration of one hundred and twenty days from June 25, 1938, it shall be unlawful for any person
 (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee . . . .
 
 
 [3]
 29 U.S.C. § 213(a)(1) provides:
 (a) The provisions of section 206 . . . and section 207 of this title shall not apply with respect to
 (1) any employee employed in a bona fide, executive, administrative, or professional capacity . . . .
 
 
 [4]
 The magistrate's computations are explained in the following excerpt from the quantum report:
 The record shows that plaintiff worked a total of 118 weeks with an additional two weeks vacation. During his periods of employment he was paid at the rate of $4.04 an hour, $4.33 an hour, and $4.57 an hour. Thus, his straight time hourly wage averaged $4.31 per hour. Under the Act, he was allowed to work only forty hours per week without overtime compensation. In most instances, especially while in the field, plaintiff's work week averaged far greater than forty hours and sometimes, almost doubled that figure. We find, therefore, that his average work week was sixty hours, or a twenty-hour average of overtime. This gives a total of 2,360 overtime hours. The record shows he was compensated by defendant for straight time of 966 hours, thus revealing a total of 1,394 hours not compensated by either straight time or time and one-half as required by the Act. One and one-half for overtime calculated upon his regular hourly wage is $6.46. This amounts to $9,005.24. Moreover, defendant owes one-half additional time for the 966 hours for which plaintiff was paid straight time. This amounts to (966 X $2.15) a total of $2,076.90, which added to the $9,005.24 gives a total of $11,082.14. Plaintiff, then, is entitled to receive as liquidated damage, double the latter figure, or $22,164.28.
 We accept the figure submitted by defendant, at page 97 of its brief, its summation being the sum of $4,134.48, as his diminished earnings brought about by his unlawful discharge. To this we add the sum of $2,000 as damages caused by his discharge, in accordance with the jurisprudence. Thus, the total amount of back pay and liquidated damages, together with damages for his unlawful discharge, amounts to the sum of $28,298.76.
 
 
 [5]
 The district court arrived at the $39,081.46 figure through the following computation
 BACK PAY
 Projected Average Annual Rate of Pay of Hewett M. Reeves:
 Owed
 Plaintiff's Plaintiff by
 Year Earnings Defendant
 ----------- ----------- ------------
 1967
 ----
52 wks. x 40 hrs. = 2080 hrs
 at $4.31 = $ 8,964.80
52 wks. x 20 O.T. = 6,718.40
 -----------
 $15,683.20
Less last earnings
 with ITT in 1967 9,500.00
 -----------
 $ 6,183.20 $ 1,307.72 $ 4,875.48
 1968
 ----
Average earnings $15,683.20 8,360.00 7,323.20
 1969
 ----
Average earnings $15,683.20 8,840.00 6,843.20
 1970
 ----
Average earnings $15,683.20 11,285.47 4,397.73
 1971
 ----
Average earnings $15,683.20 9,395.80 6,287.40
 1972
 ----
Average earnings $15,683.20 14,569.00 1,114.20
 1973
 ----
Average earnings $15,683.20 7,442.95 8,240.25
 1974
 ----
Average earnings $15,683.20 15,715.77 --
 ------------
 $39,081.46
 
 
 [6]
 The district court summarized the award in his final order as follows:
 Straight time and overtime owed by defendant
 to plaintiff, plus liquidated damages $22,164.28
Back pay owed by defendant to plaintiff for
 years 1967 through 1974 39,081.46
Attorney's fee 35,000.00
 ----------
 $96,245.74
 
 
 [7]
 Federal courts have always had "jurisdiction" to provide remedies for retaliatory discharge in actions brought by the Secretary. For this reason, the issue might more accurately have been framed as a challenge to the procedural capacity of the employee to bring a private action to remedy an unlawful discharge. Since we merely set forth the argument as it was presented to us in the briefs, we retain IT&T's characterization of the problem as jurisdictional. We have no serious difficulty with the terminology in any event. The critical question in a procedural capacity or standing challenge is whether the plaintiff possesses sufficient status and stake in the outcome "to warrant his invocation of federal-court jurisdiction." Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 260-61, 97 S.Ct. 555, 561, 50 L.Ed.2d 430 (1977); Singleton v. Wulff, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). It is not inappropriate, therefore, to assert that a court is without "jurisdiction" to address the claims of a party which lacks the procedural capacity to sue
 
 
 [8]
 Our discussion does not contradict the well-established rule that jurisdictional challenges may be raised at any time. Fed.R.Civ.P. 12(h)(3); Menchaca v. Chrysler Credit Corp., 613 F.2d 507 (5 Cir. 1980); Mansfield, Coldwater & Lake Michigan Railway v. Swan, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884). We do not question the district court's authority to rule on the jurisdictional challenge at any stage. It is necessary to determine when the claim was first brought before the district court, however, because only when the claim is properly raised does the court have a duty to address the challenge. That determination bears upon a critical issue in this appeal the timeliness of the Secretary's intervention
 
 
 [9]
 IT&T argues that this case is distinguishable from Bush, because here the statutory period had run prior to the amendments. This identical claim, however, was raised and rejected in Bush. There, the court held that the existence of federal subject matter jurisdiction under 28 U.S.C. § 1333 eliminated the limitations problem by tolling the statute upon filing of the claim. Our determination that the statutory period of 29 U.S.C. § 255 does not apply to the Secretary's claim under section 15(a)(3), renders unnecessary a decision on the federal subject matter issue
 
 
 [10]
 The following excerpts from written performance evaluations are illustrative of the appraisals Reeves received from supervisors during his employment at IT&T
 For the period
 ending July 7,
 1966: Mr. Reeves' technical knowledge and
 ability has proven to be excellent
 and he has batted 1,000 on his
 complaints and reports . . . . In
 my opinion, Mr. Reeves is the best
 RF man we have within our organization.
 This opinion is shared by . . . . [the]
 most senior microwave systems man.
For the period
 from 1967 to
 May 1968: Mr. Reeves' performance on this
 project has been characterized by
 others as being one of very high
 efficiency. . . . Mr. Reeves
 continues to be one of the most capable
 RF individuals within the installation
 and service organization.
 
 
 [11]
 29 U.S.C. § 211(c) provides as follows:
 Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.
 
 
 [12]
 The average 60 hour workweek computed over Reeves's term of employment resulted in a total of 2,360 overtime hours, 966 of which were compensated by IT&T at the undisputed straight time rate. When the additional overtime wages ($2.15) are added for those 966 hours and the full time and a half rate ($6.46) is calculated for the remaining 1,394 overtime hours, this results in a total unpaid overtime damages award of $11,082.14
 
 
 [13]
 The fact finder was justified in concluding from a number of factors that IT&T knew or should have known it was violating the overtime provisions of the Act. These factors include: the company's instructions not to report overtime hours; the willful discharge of Reeves; supervisors' statements that employees would have to realize they would be working uncompensated overtime hours; and the uncooperativeness of IT&T during discovery. Additionally, as the district court aptly concluded and as we have so held, Reeves was not an exempt employee under the Act
 
 
 [14]
 Under section 207(d)(2) of the Act, as amended in 1974, the "regular rate" of an employee does not include "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment."