**Anthony J. DUPLESSIS, et al.**

**v.**

**DELTA GAS, INC. and Louisiana Energy & Development Corporation.**

**Civ. A. No. 85–2754.**

United States District Court, E.D. Louisiana.

July 17, 1986.

As Amended July 23, 1986.

Joseph E. Defley, Jr., Port Sulphur, La., Cynthia Davidson, Gretna, La., for plaintiffs.

Logan L. Loomis, New Orleans, La., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

PATRICK E. CARR, District Judge.

This matter came on for trial before the Court, sitting without a jury, on June 23, 1986. The plaintiffs [1] are all employees of the defendant, Delta Gas, Inc., a wholly owned subsidiary of defendant Louisiana Energy and Development Corporation (LEDCO). Prior to 1980, the plaintiffs were paid on an hourly basis and received "time and a half" for overtime. In that year, plaintiffs signed "agreements" by which they were placed on salary, plus benefits [2], and no longer received overtime compensation. On July 1, 1985, after this suit was filed, defendant returned plaintiffs to the hourly pay scale and again paid overtime compensation, but no other benefits.

Plaintiffs brought suit under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq., seeking to recover the unpaid overtime compensation, liquidated damages and reasonable attorneys' fees.[3] It was not disputed that at all times the plaintiffs were protected employees under the FLSA. Additionally, prior to trial the parties entered a stipulation setting forth the amount of overtime worked by each employee during the preceding three years and the proper rate of overtime pay for each. The essential dispute revolved around one employee, John C. Ragas, Sr., whose time records for a one and one half year period had been lost and for whom no stipulation could be reached for that period. The parties also dispute whether or not overtime compensation is due for lunch hours which were not actually taken. Defendants also sought credit for the benefits paid, asserting that such benefits were intended to compensate the employees in lieu of overtime, pursuant to 29 U.S.C. § 207(h). Further, defendants acknowledged that their conduct was in violation of the FLSA, but seek to limit plaintiffs' recovery to a period of two years and avoid the imposition of liquidated damages by showing good faith and reasonableness in their conduct pursuant to the Portal-to-Portal Pay Act, 29 U.S.C. § 260.

At the close of all of the evidence, the Court took the matter under submission and the parties were given time to file post-trial memoranda. Now, upon consideration of the entire record the documents in evidence, the testimony of the witnesses, and the law applicable to this case, the Court renders its findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

The Court has jurisdiction pursuant to 28 U.S.C. § 1331, and 29 U.S.C. § 216(b). Venue is proper.

Defendant, Louisiana Energy & Development Corporation is a Louisiana holding company. Its wholly owned subsidiary, defendant, Delta Gas, Inc., is a local distribution company served by an interstate pipeline, and in such capacity distributes natural gas to residential and commercial customers in Plaquemines Parish, Louisiana.

1. The individual plaintiffs are: Anthony J. Duplessis, Mervin Riley, Jr., John C. Ragas, Sr., Peter Williams, Errol Turner, Dwight Bartholomey, Gerald Ragas, Malcolm Turner, Patrick Dinet, August Mackey, Claudia Phillips, Patrick Williams, Shafter Williams, Jr., Raymond Antoine and Wilton Madison. Plaintiff, Orlando Ragas, moved for a voluntary dismissal at the commencement of trial, which motion was granted.

2. These benefits included sick pay, extended vacation time with pay, paid personal time off (e.g.: a death in the family), and paid time for jury duty. Additionally, plaintiffs received a bonus at the end of each year based upon performance, tenure, and salary.

3. The Court severed the issue of attorneys' fees for determination at a later time.

With the exception of J.C. Ragas, all plaintiffs were employed by defendant Delta as laborers. Plaintiff Ragas was employed by Delta in the Meter Technician Department. At the pertinent times, Ragas' time records were kept separately from that of the other plaintiffs.

Prior to 1980, all plaintiffs were paid on an hourly basis and received no fringe benefits. They were, however, compensated at time and one half for overtime hours worked. In that year, however, all employees became salaried by signing "agreements" with Delta and began receiving pay for "non-productive hours attributable to absence for sickness, attendance of funerals, jury duty and personal reasons." *See* Fact Stipulation, p. 4. They also received end of the year bonuses.

J.Q. Delap, Jr., the Executive Vice President of Delta, initiated the change from hourly to salary pay. Mr. Delap testified that at the time he initiated the change in pay, the company was having personnel problems, that the employees were working too much overtime and that his job was to straighten out the problems and 'get the company making money.' Hence, Mr. Delap devised a 'disincentive' overtime plan whereby no overtime would be paid and instead all employees would be placed on salary plus benefits.

The monthly salary figure was derived by figuring out the monthly amount of hourly pay, adding to that an average of the overtime worked in the past, and giving the employee an increase in pay. According to Mr. Delap, the purpose of the plan was not to save the company money. Rather, Mr. Delap testified, the plan was devised to encourage the employees to perform their work during regular working hours and increase the efficiency of the company's operations. In fact, the monthly salary proposal would result in an overall increase in cost.[4]

Mr. Delap, who has a Masters Degree in Business Administration, acknowledged that at the time in question he was aware that the employees were covered by the FLSA. He testified that he thought, however, that the "agreements" signed by the employees would constitute adequate waivers under the FLSA. Mr. Delap did not consult with an attorney prior to drafting the "agreements".

These "agreements" were entitled monthly salary proposals. Each employee was given a separate form and the opportunity to accept or reject the proposals. Under cross examination, Mr. Delap acknowledged that the company would have no recourse if the employees refused to go on salary. According to Mr. Delap, the employees were urged to join the "Delta team" but were assured that they would be retained on an hourly basis with no benefits, as before, if they rejected the proposal.

Mr. Delap acknowledged that there were initially several rejections; however, he met with the employees several times, explained the benefits of the plan, and eventually all signed the agreements to go on salary. Contrary to this testimony is that of the plaintiffs who testified that their immediate supervisors threatened them with the loss of their jobs if they refused to be paid on a monthly basis.

The Court finds that the monthly salary proposal was highly unpopular with the employees who were justifiably concerned for their rights to overtime pay. In fact, under cross examination, although Mr. Delap insisted that the company had no intention of working the employees overtime, he admitted that there would be nothing to prevent the company from abusing the employees through overtime work. Further, the Court specifically finds that the "agreements" were not voluntary but rather were coerced by threats of job loss.

Mr. Delap testified that he was unaware of the unpopularity of the monthly salary plan until July of 1985 when he was ap-

---

**4.** The Court notes the inconsistency of this testimony with Mr. Delap's earlier statement regarding his 'mission' at the company.

prised of the situation by Mr. Ed Daigle, the Vice President of Engineering and Operations. According to Mr. Delap, the employees were placed back on the hourly rate of pay without fringe benefits upon Mr. Daigle's recommendation. At the time of trial, Mr. Daigle testified that he first learned of the employees' desire to be paid on an hourly basis in May of 1985. This testimony, and that of Mr. Delap, was effectively discredited on cross examination of Mr. Daigle. At a National Labor Relations Board hearing on September 17, 1985, Mr. Daigle testified as follows:

Q. Mr. Daigle, you became aware of the employees' concern about overtime in January of 1985, is that correct?

A. No, that is not correct.

Q. When did you first become aware of the employees' concern about overtime?

A. In late May.

Q. Of 1985?

A. Of 1985.

Q. You had no idea before that time, in January of '85 or any time that the employees were interest [sic] in it?

A. Oh, yeah, we've had discussions over a period of time, dating back a couple of years, questions by individual employees, you know, "Why can't we get overtime?" This became the subject of my January meeting with my boss.

\* \* \* \* \* \*

Q. And did you take any efforts between January and July 1 to put the people on overtime besides this one meeting that yor're talking about?

A. Yes, I did, from July 1 backwards. I had the meeting in January with M.Q. Delap, as I testified earlier. On May 31 I went to—you know, I was advised prior to May 31 that the guys were really wanting to be able to be paid overtime.

\* \* \* \* \* \*

*See* Exhibit P–16.

Based upon the foregoing and the testimony of the plaintiffs, the Court finds in fact that the employees continually expressed their dissatisfaction with the arrangements. The employees drew up a petition and attempted to deliver it to Mr. Delap through a supervisor. Mr. Delap never received the petition. The employees attempted to speak to Mr. Delap but were unsuccessful, their efforts again being thwarted through their supervisors. The Court finds that the defendants, through their supervisory personnel, were well aware of the dissatisfaction of the employees with the monthly salary plan. Additionally, the Court finds that the defendants dared the plaintiffs to hire a lawyer because they 'had the best lawyers' around.

The Court finds that the employees were in fact given pay raises at the time of the initial change to monthly pay. Further, Delta did in fact begin compensating the employees for "nonproductive" work time and paying year end bonuses. While Delta does not seek a credit for the initial wage increases, it does seek to credit the amounts paid for non-productive time which it asserts it paid the employees in lieu of overtime compensation. In this regard, Delta asserts that while the payments were voluntarily made, it did so intending to compensate the employees for the overtime admittedly worked by the employees during the pertinent period.

As previously stated, the amount of overtime worked by the employees, with the exception of a one and one half year period for J.C. Ragas, has been stipulated. Because the records for Mr. Ragas' time worked between 6/21/82 and 1/03/84 were lost, the only evidence in this regard consisted of Mr. Ragas' testimony and that of other witnesses testifying to the average amount of overtime worked during that period.

Mr. Ragas testified that at that time the employees were putting in large amounts of overtime because new stations were being put in. Mr. Ragas further testified that he began working more overtime after going on salary, up to 14 or 15 hours per week. He stated that if he was on the job he had to stay until completion, sometimes until 9 or 10 o'clock at night. Mr. Ragas

also stated that he would have to work 2 to 3 hours every other Saturday and Sunday.

A review of the time sheets shows that in some cases, overtime increased during the period for other employees; in other cases, the overtime worked decreased. *See* Fact Stipulation of the Parties, with attached time sheets. Ed Daigle testified that overtime work has increased in 1985; however, prior to that time, there had not been as much. Contrary to Mr. Ragas' testimony, Mr. Daigle also testified that Mr. Ragas worked about the same amount of overtime in the period from January 1, 1984 to June 21, 1985 as the previous one and one half years for which the records are lost. Additionally, Mr. Daigle contradicted Mr. Ragas' testimony in regard to the number of new stations being placed by the company and the amount of time allegedly worked by Mr. Ragas on weekends.

The Court finds that the exact amount of overtime worked by Mr. Ragas cannot precisely be determined. Based upon the testimony of the witnesses and the documentary evidence, the Court finds that the amount of overtime worked is less than as testified by Mr. Ragas, and more than as testified by Mr. Daigle.

The final area of factual dispute concerns the employees' claim to overtime compensation for the time spent on a boat during the noon hour. Again, the testimony of the various witnesses was contradictory. The Court finds that the employees were expected by their employer to take a lunch hour, that is, an hour of personal time for eating or resting. The employees were not required to take this hour solely between the hours of noon and 1 o'clock p.m. but could take the hour when available during the day. They were not, however, allowed to leave an hour early if lunch had not been taken. The Court further finds that although the employees would occasionally be out on a boat at the noon hour, they were not prevented from taking an hour's time and eating a paper bag lunch. Additionally, the employees would be able to take a lunch hour upon returning to shore if they had not done so

on the boat. Delta did in fact compensate the employees for a one hour lunch period at the regular rate of pay. The Court finds that the employees were not deprived of a lunch hour while out on the boat. Hence, the employees are not entitled to overtime compensation for those periods.

Under the FLSA, 29 U.S.C. § 201, *et seq.*, an employee working overtime must be compensated at a minimum rate of one and one half times the regular rate at which he is employed. 29 U.S.C. § 207. The Act further provides that any employer who violates the overtime provisions shall be liable in the amount of unpaid overtime compensation. 29 U.S.C. § 216(b). Additionally, if the employer's action is found to be "willful," the employee is entitled to an equal amount in liquidated damages. *id.*

As previously stated the amounts of overtime worked and the rate of overtime for each employee have been stipulated and will be set forth at the end of this opinion. Only the records for J.C. Ragas, Sr. were lost for a one and one half year period. Defendants do not dispute the fact that overtime payments are due, but dispute Mr. Ragas' entitlement to overtime for the period in which there are no records.

Under the Act, an employee who brings suit for unpaid overtime compensation bears the burden of proving, with definite and certain evidence, that he performed work for which he was not properly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); *Marshall v. Dallas Independent School District*, 605 F.2d 191 (5th Cir.1979); *Johnson v. Dierks Lumber & Coal Co.*, 130 F.2d 115 (8th Cir.1942). Inaccurate wage and hour information, however, is not always fatal to a claim for minimum wage or overtime compensation under the Act. Where the inaccuracy is due to the employer's failure to keep adequate records as required by statute, [footnote omitted] imprecise evidence on quantum can provide a "sufficient basis" for damages. *Anderson v. Mt. Clemons Pottery Co.*, 328 U.S. at 687, 66 S.Ct. at 1192; *Mar-*

*shall v. Mammas Fried Chicken, Inc.,* 590 F.2d 598 (5th Cir.1979); *Hodgson v. Jones,* 434 F.2d 1061 (5th Cir.1970). Under these circumstances, we have "in effect ordered the fact finder to do the best he could in assessing damages." *Mitchell v. Riley,* 296 F.2d 614, 616 (5th Cir. 1961).

*Reeves v. International Tel. and Tel. Corp.,* 616 F.2d 1342, 1351 (5th Cir.1980); *appeal after remand on other grounds,* 705 F.2d 750, *reh'g granted on other grounds,* 709 F.2d 358 (5th Cir.1983).

■ The employee meets his burden if he proves that he has in fact performed work for which he was not adequately compensated and produces sufficient evidence to show the amount and extent of that work "as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. at 687–88, 66 S.Ct. at 1192. The employer then bears the burden of going forward with evidence of the actual amount of work performed or with evidence to negate the reasonableness of the inference drawn from the employee's evidence. Failing that, the Court may award such damages to the employee as are reasonably to be inferred, even if such damages can only be approximated. *id.*

The Court finds that Mr. Ragas carried his burden of proof under the foregoing standard. Delta failed to negate the inference that overtime hours were worked; however, Delta did convince the Court that the hours claimed by Mr. Ragas were exaggerated. Hence, the Court finds, based upon the facts as found, that Mr. Ragas' overtime hours for the year and one half period in which records are unavailable are approximately the same average amount of overtime hours during the following year and one half for which records do exist.

■ Under the FLSA, there is a presumption of "willfulness" against the employer in violation of the Act. This presumption stands, absent positive and compelling proof of good faith. It is not enough to plead and prove ignorance of the wage requirements. Knowledge will generally be imputed to the offending employer. *Marshall v. A. & M. Consolidated Independent School District,* 605 F.2d 186 (5th Cir.1979). Complete ignorance of the possible applicability of the Act does not shield the employer from liability for liquidated damages. *Coleman v. Jiffy June Farms, Inc.,* 458 F.2d 1139 (5th Cir.1972) [knowledge that the Act was "in the picture."] Good faith requires some duty to investigate potential liability under the Act. *Barcellona v. Tiffany English Pub, Inc.,* 597 F.2d 464 (5th Cir.1979).

■ Further, lack of good faith is demonstrated when an employer "knows, or has reason to know, that his conduct is *governed by* the [Act]." *Brennan v. Heard,* 491 F.2d 1, 3 (5th Cir.1974) [emphasis supplied]. An employer cannot satisfy the burden of proving good faith and reasonableness under the Portal-to-Portal Pay Act (29 U.S.C. § 260) solely by suggesting that lower-level employees are responsible for the violations or by professing ignorance of the requirements of the Act. *LeCompte v. Chrysler Credit Corp.,* 780 F.2d 1260, 1263, *reh'g den.,* 784 F.2d 1113 (5th Cir.1986). Hence, if the employer fails to prove that its violation was "both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict," liquidated damages should be imposed. *Reeves,* 616 F.2d at 1352.

Based upon the facts and circumstances of this case, particularly upon the credibility of the witnesses, and the applicable law, the Court is compelled to conclude that defendants Delta and LEDCO were "willful" within the meaning of the FLSA. Hence, in addition to the overtime compensation for the previous three year period, plaintiffs are also entitled to recover liquidated damages in an amount equal to the overtime due.

Defendants seek a credit against plaintiffs' award of overtime compensation for the extra compensation paid for non-productive time and year end bonuses, allegedly in lieu of overtime compensation. Under section 7(h) of the FLSA, certain types

of extra compensation are to be treated as overtime compensation and may be credited to the employer. These types of compensation are:

7(e)(5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours or regular working hours, as the case may be;

7(e)(6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in non-overtime hours on other days; or

7(e)(7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a) of this section, where such premium rate is not less than one and one half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek.

■ Where, as in this case, the payments made are not themselves related to the performance of overtime, and instead are "payments made for occasional periods when no work is performed ...," and the bonus paid is at the sole discretion of the employer, such payments are not included in the regular rate of pay nor are such payments creditable as overtime. 29 U.S.C. §§ 207(e)(2), (3) and 207(h).

Additionally, the Court specifically finds, based upon the overall facts and circumstances of this case, and the previous finding of "willful" conduct on the part of defendants, that the payments made for non-productive time and bonuses paid were *not intended* to compensate the employees in lieu of overtime compensation. *See: Brock v. Two R Drilling Co., Inc.*, 772 F.2d 1199 (5th Cir.1985), *on reh'g* 789 F.2d 1177 (5th Cir.1986); *Dunlop v. Gray-Goto, Inc.*, 528 F.2d 792 (10th Cir.1976); *Roland Electric Co. v. Black*, 163 F.2d 417 (4th Cir.1947). Hence defendants are not entitled to a credit for these amounts paid.

Based upon the foregoing, and upon the stipulation of the parties[5], the plaintiffs are entitled to recover as follows:

| EMPLOYEE | OVERTIME HOURS | AMOUNT DUE FOR OVERTIME | TOTAL AMOUNT DUE (INCLUSIVE OF LIQUIDATED DAMAGES) |
|---|---|---|---|
| 1. Raymond Antoine | 5 | $ 58.90 | $ 117.80 |
| 2. Dwight Bartholomew | 21.5 | $ 177.37 | $ 354.74 |
| 3. Patrick Dinet | 45 | $ 419.10 | $ 838.20 |
| 4. A. J. Duplessis | 34 | $ 440.98 | $ 881.96 |
| 5. August J. Mackey | 66 | $1169.83 | $2339.66 |
| 6. Wilton Madison | 30 | $ 257.75 | $ 515.50 |
| 7. Claudia Phillips | 8 | $ 67.74 | $ 135.48 |
| 8. Gerald Ragas | 179.5 | $2510.60 | $5021.20 |
| 9. J. C. Ragas[6] | 296.4 | $4186.77 | $8373.54 |

**5.** See the fact stipulation of the parties which contains the specific number of overtime hours worked and the overtime rate applicable to those hours. The Court used these figures to arrive at the totals.

**6.** Mr. Ragas worked an average of 8.3 hours/month overtime for the 18 month period for which records exist. Hence, the Court determined the number of hours worked overtime for the period in which records are missing by using this average figure.

| | EMPLOYEE | OVERTIME HOURS | AMOUNT DUE FOR OVERTIME | TOTAL AMOUNT DUE (INCLUSIVE OF LIQUIDATED DAMAGES) |
|---|---|---|---|---|
| 10. | Mervin Riley | 117 | $ 990.25 | $1980.50 |
| 11. | Errol Turner | 22 | $ 181.50 | $ 363.00 |
| 12. | Malcolm Turner | 23 | $ 189.75 | $ 379.50 |
| 13. | Patrick Williams | 82 | $ 705.15 | $1410.30 |
| 14. | Peter Williams | 123 | $1302.48 | $2604.96 |
| 15. | Shafter Williams | 153 | $2290.95 | $4583.90 |

Plaintiffs are not entitled to pre-judgment interest but are entitled to post-judgment interest. *Reeves*, 705 F.2d at 751–52. Additionally, because the plaintiffs have been successful, the Court is required to impose reasonable attorneys' fees. The amount is discretionary with the Court. *Reeves*, 616 F.2d at 1354. As this issue was severed, the Court hereby RESERVES the question of reasonable attorneys' fees and will refer the matter to the Magistrate.

Judgment shall be rendered accordingly.