**Elizabeth DOLE (formerly McLaughlin), Secretary of Labor, United States Department of Labor**

v.

**Fred BISHOP and Carol Bishop.**

**Civ. A. No. J88–0431(L).**

United States District Court, S.D. Mississippi, Jackson Division.

April 16, 1990.

Debra H. Goldstein, Office of the Solicitor, U.S. Dept. of Labor, Birmingham, Ala., for plaintiff.

Dixon Pyles, Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

### INTRODUCTION

Plaintiff, the Secretary of Labor, brought this action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA or Act), alleging violations of the Act's minimum wage, overtime, child labor and recordkeeping provisions. The cause was tried to the court. Based on the

evidence adduced at trial, the court makes the following findings and conclusions.

## FACTS

Since September 1985 defendants, Fred Bishop and Carol Bishop, have owned and operated a seafood restaurant in Vicksburg, Mississippi known as the Lucky Fisherman Restaurant, and since July 1986 they have owned and operated a second restaurant by this name located in Jackson, Mississippi. In 1987 the Wage and Hour Division of the Department of Labor conducted an investigation of the two establishments. Charla Jordon, the Wage and Hour compliance officer, examined records and interviewed defendants and their employees. Based on her findings, the Wage and Hour Division determined that defendants were covered by the FLSA and were in violation of its minimum wage, overtime, child labor and recordkeeping provisions. Defendants denied both that they were covered by the Act and that they had failed to compensate their employees in accordance with the Act's provisions. The Secretary of Labor subsequently brought the present action, seeking recovery on behalf of the employees for back wages and liquidated damages. Plaintiff also seeks a prospective injunction restraining future violations.

## FLSA COVERAGE

### The Enterprise Theory of Coverage

█ Plaintiff's contention that defendants are covered by the FLSA is premised upon the enterprise theory, i.e., that defendants' employees are covered because during the relevant time period they were employed in an enterprise "engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 203(s) (1978); 29 U.S.C. § 206(a) (1978); 29 U.S.C. § 207(a)(1) (Supp.1989); 29 U.S.C. § 212(c) (1985). One of the requirements for a service establishment such as a restaurant to be considered an enterprise engaged in commerce or in the production of goods for commerce is that its annual gross volume of sales be not less than $362,500. 29 U.S.C. § 203(s)(2). While it is undisputed that the combined sales of the two restaurants for

the relevant years meet this requirement, the sales of each separate restaurant do not. Thus, one condition of coverage in the present case is that the two restaurants constitute an enterprise. Defendant denies that the two restaurants meet this condition.

█ The FLSA provides, in relevant part, that the term " '[e]nterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments...." 29 U.S.C. § 203(r) (1978). Thus, the three elements to be satisfied are (1) related activities, (2) unified operation or common control and (3) common business purpose. *Brennan v. Arnheim & Neely,* 410 U.S. 512, 518, 93 S.Ct. 1138, 1142, 35 L.Ed.2d 463 (1973).

*Related Activities.* Related activities are those which are "the same or similar." S.Rep.No. 145, 87th Cong., 1st Sess. 31, *reprinted in* 1960 U.S.Code Cong. & Ad. News 1620, *quoted in Arnheim & Neely,* 410 U.S. at 518, 93 S.Ct. at 1142, and *Wirtz v. Savannah Bank & Trust Co. of Savannah,* 362 F.2d 857, 860 (5th Cir.1966). The two seafood restaurants operating under the name "Lucky Fisherman" served the same types of foods within the same format (primarily buffet) and were therefore undoubtedly similar.

*Unified Operation or Common Control.* Defendants argue that the restaurants are not under their common control because each defendant has primary management responsibility for only one of the restaurants. Each testified that he or she has no authority in the other's restaurant, and Fred Bishop testified that while both own jointly the real property upon which the two restaurants are situated, he considers the Vicksburg business to be owned by only Carol. But the manner in which the Bishops have actually agreed to divide their authority and their own perceptions of control are not necessarily determinative. While each may defer to the other's decisions with regard to a particular

restaurant, Fred and Carol Bishop comprise a general partnership in which each owns a fifty percent interest. Legally, each can assert just as much authority in either restaurant as can the other. As one court has stated, "[t]he test is not the day-to-day control of the [establishments] but whether there is a *common control center* with the ultimate power to make binding decisions for all the units of the enterprise. 'Common control' may exist ... despite the separate management of the individual establishments." *Shultz v. Morris*, 315 F.Supp. 558, 564 (M.D.Ala. 1970), *aff'd sub nom. Hodgson v. Morris*, 437 F.2d 896 (5th Cir.1971).[1] The court concludes that this portion of the test for an enterprise is met.

*Common business purpose.* Finally, the court finds, based on two factors, that the two restaurants share a common business purpose. Both are operated to provide income to the Bishops. *See Arnheim & Neely*, 410 U.S. at 518, 93 S.Ct. at 1142 (management of commercial properties for profit constituted common business purpose). Secondly, because they share the same name and are located in cities near to each other, each restaurant may capitalize on the name and goodwill of the other. Fred Bishop testified that one of the reasons for opening the Jackson restaurant was that many of his Vicksburg customers drove over from Jackson in order to eat at the Vicksburg Lucky Fisherman. *Cf. Savannah Bank & Trust Co.*, 362 F.2d at 860 (banking operation in portion of office building owned by bank had common business purpose with management and rental of remainder of office building, where purpose of operating downtown building was to enhance image of bank, increase its profits and provide room for expansion).

*The Interstate Commerce Requirement*

▆▆▆ The FLSA states that the requirement that the enterprise be "engaged in commerce or in the production of goods for commerce" may be met by a showing that the enterprise has employees "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." 29 U.S.C. § 203(s). The term "commerce" refers to interstate commerce. *See* 29 U.S.C. § 203(b). Defendants argue that they were not engaged in interstate commerce. This position is untenable. The evidence presented at trial unequivocally showed that the waitresses, cooks and busboys of both establishments regularly handled food items and cleaning supplies that were shipped from outside the state of Mississippi. Defendants also argue that, assuming such goods were handled by employees, defendants were nevertheless not engaged in interstate commerce because of the "coming to rest" doctrine, i.e., that the goods ceased to be goods shipped in interstate commerce when they came to rest with a distributor within the state. While this defense was viable under previous versions of the Act, it is no longer so. *See, e.g., Brennan v. Greene's Propane Gas Serv., Inc.*, 479 F.2d 1027, 1030–31 (5th Cir.1973); *see also Donovan v. Scoles*, 652 F.2d 16, 18–19 (9th Cir.1981), *cert. denied*, 455 U.S. 920, 102 S.Ct. 1276, 71 L.Ed.2d 460 (1982). In a final attempt to persuade the court that they are not subject to the provisions of the Act, defendants refer to another obsolete exception—that they are not covered because the term " 'goods' does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof." 29 U.S.C. 203(i). This defense no longer applies in the present context, as the Act now states, pursuant to a 1974 amendment, that in order for an enterprise to be engaged in commerce, it must have employees "handling, selling, or otherwise working on

---

1. It is also worth noting that both Fred and Carol Bishop listed themselves as owners on their application filed with the Mississippi State Department of Health for a license to operate the Jackson restaurant, that the food service permit for the Vicksburg establishment is issued to both Fred and Carol Bishop, that the two restaurants utilize the same federal tax identification number, and that the Bishops customarily file a joint federal tax return reporting the income from both restaurants. Additionally, Carol Bishop, according to her own testimony, sometimes works at the Jackson restaurant and, according to the testimony of her daughter-in-law, Linda Bishop, comes to that location approximately weekly.

goods *or materials*" that have moved in interstate commerce. 29 U.S.C. § 203(s) (emphasis added). This amendment adding the words "or materials" leads to the result that virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA. *See Dunlop v. Industrial America Corp.*, 516 F.2d 498, 501–02 (5th Cir.1975).

## FLSA VIOLATIONS

*Overtime*

■ In support of her case, the Secretary produced at trial the employee records kept by defendants. These records indicate that employees who worked in excess of forty hours in a given week were paid only their straight rate of pay for those hours. Such a practice clearly violates the FLSA overtime provisions. *See* 29 U.S.C. § 207 (1965 & Supp.1989). Defendants testified, however, that the hours recorded in these records do not reflect the actual amount of time that the employees worked, because each employee had time during the work day during which he was free to eat or do whatever he wished. They contend that no employee actually worked more than forty hours in any one week. Furthermore, defendants argue that employees actually received more compensation than is reflected in the records because they were given free meals. Fred Bishop testified that he adopted this simplified method of record-keeping in part because he discovered that employees resented being made to clock out for free time and to pay for meals. Thus, it appears that defendants' position is that because they did not want to keep up with the actual time employees worked, calculate overtime pay or charge for or keep records of meals eaten by employees, they chose instead to keep employees on the clock for the entire period from when they first arrived in the afternoon until they left at night and offset any "extra" they were paying employees because of this method by paying only straight time for all hours.

In a suit under the FLSA, the plaintiff has the initial burden of proving that employees have performed work for which they were not properly compensated and must produce evidence from which the amount and extent of that work may reasonably be inferred; the burden then shifts to the employer to produce evidence that either shows the precise amount of work performed or negates the reasonableness of the inference to be drawn from the plaintiff's evidence. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 1192–93, 90 L.Ed. 1515 (1946); *Reeves v. International Tel. and Tel. Corp.*, 616 F.2d 1342, 1351 (5th Cir.1980), *cert. denied*, 449 U.S. 1077, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981). The Secretary met the initial burden by producing records showing that employees worked overtime for which they were not compensated in accordance with the Act. The absence of any records reflecting the hours "actually worked," the absence of contemporaneous records of meal credit, and the testimony of employees on the issue of the amount and nature of the so-called "free time" lead the court to conclude that defendants did not meet their burden of showing that employees worked a fewer number of hours or were compensated at a higher rate than that reflected in their records. The testimony at trial revealed that employees routinely reported to work in the early afternoon from two to four hours prior to the time the restaurants opened for service. During this period, waitresses performed such tasks as cleaning the bathrooms and other general areas of the restaurant, setting up the salad bar, chopping vegetables, making tea, puddings and ice cream, filling salt and pepper shakers and filling catsup bottles. Cooks prepared food during this time. Often these employees finished these tasks before the restaurant opened. The waitresses' estimates of their average amount of this free time varied from 15 minutes to an hour. In contrast, Carol Bishop and Linda Bishop, defendants' daughter-in-law and an employee of the Jackson restaurant who formerly worked at the Vicksburg Lucky Fisherman, testified that the waitresses usually had from one to two and one-half hours of free time. With regard to other positions, one employee testified that while employed as a cook

he often had two to two and one-half hours of free time before the restaurant opened. The evidence also showed that toward the end of the evening, when business slowed, employees would take a few minutes to eat a meal. These meal times were staggered so that other employees could cover for the one who was eating. The court concludes from the evidence that employees often had approximately 15 minutes to 45 minutes, occasionally longer, before the restaurant opened, during which time they did not necessarily perform any work. They also took approximately 15 to 30 minutes late in the evening to eat a meal.

■ Nevertheless, the court finds that this time was compensable. Waitresses testified that they often spent the time before the restaurant opened signing their names on the tickets they would be using for the evening and that this task was required of them. Clearly, this activity was part of the waitresses' duties. Moreover, while some employees testified that management would give them permission to leave the restaurant during these periods, leaving appears to have been the exception rather than the customary practice. Most employees remained at the restaurant during this time and were subject to interruptions and recall to employment tasks. During their meal time later in the evening, all employees were subject to recall and waitresses sometimes had to wait on customers. *Cf. Goldberg v. Willmark Service System, Inc.*, 215 F.Supp. 577, 585–86 (D.Minn.1961) (free time which was result of fortuitous circumstances and not granted to benefit employees, during which employees awaited orders, held compensable).

■ Neither are defendants entitled to any credit for the cost of meals provided to employees. While Fred Bishop testified at trial that he sought to claim credit for half the retail price of the meals provided employees, he was unable to show that such an amount would constitute the reasonable cost of these meals to defendants. *See* 29 U.S.C. § 203(m) (Supp.1989). Furthermore,

defendants kept no contemporaneous records of meal credits, as required by the Wage and Hour Division regulations. 29 C.F.R. 516.27 (1989). The only documentation offered at trial consisted of reconstructed records prepared during the investigation. These records attempted to claim credit for the full retail prices of the meals. The court concludes that defendants are entitled to no credit for meals furnished their employees. As the Eleventh Circuit has stated, "an employer's unsubstantiated estimate of his cost, where the employer has failed to comply with the recordkeeping provisions of the FLSA, and where there has been no determination of reasonable cost by the Wage and Hour Division, does not satisfy the employer's burden of proving reasonable cost." *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 475 (11th Cir.1982). Furthermore, it is likely that such credit would not help defendants' cause, as the addition of the value of the meals to the hourly wages of employees would have the effect of increasing the rate at which overtime should have been paid.

*Minimum Wages*

■ The minimum wage violations alleged by plaintiff consist of defendants' failure to pay busboys any hourly wage at all and their payment of only $2.01 to $2.25 an hour to waitresses regardless of whether the waitresses were engaged in tipped or non-tipped activities.[2] At trial defendants attempted to disprove that busboys were not properly compensated. Carol Bishop testified that busboys were always paid an hourly wage and that during the period in question she kept records on those wages, but has since misplaced them. Plaintiff's evidence contradicted this testimony. Charla Jordan, the wage and hour compliance officer who investigated the case, testified that when she first interviewed Carol Bishop, Mrs. Bishop told her that she paid no hourly wage to busboys, who received only tips, and that she kept

---

**2.** An employer is required to pay only 60% of the statutory minimum wage to tipped employees if those employees actually receive tips in an amount equal to 40% of the minimum wage. *See* 29 U.S.C. § 203(m).

no daily or weekly records on them. Ms. Jordan also testified that the busboys she interviewed told her that they received only tips. The court finds that, during the period charged by plaintiff, defendants did not pay busboys an hourly wage. The court would note that it makes this finding in spite of the testimony of two busboys to the contrary. David Emerson testified that during the period in question he was paid an hourly wage of $2.01. Plaintiff then impeached him with a prior signed statement, in which he had stated that he received only tips for compensation. After much self-contradiction and after intense questioning by the court, Mr. Emerson finally arrived at the conclusion that he was paid an hourly wage of $2.01 in cash. He was unable to explain why his signed statement indicated otherwise. Similarly, Andrew Eargle testified that he received an hourly wage. When counsel for Plaintiff confronted him with his previous written statement that he received only tips, he explained it by saying that he had lied in the statement. The court is of the opinion that both of these witnesses lied on the stand and that their testimony is entitled to no weight whatsoever.

■■■ As previously stated, the testimony presented at trial indicated that waitresses spent a substantial portion of their time in the afternoons before the restaurant opened performing such duties as cleaning bathrooms and other general areas of the restaurant, chopping vegetables, and making puddings and ice cream. Because these cleaning and food preparation duties were not incidental to the waitresses' tipped duties, the waitresses were entitled to the full statutory minimum wage during these periods of time.

Again, defendants take the position that they do not really owe these minimum wages because they compensated the employees for non-working time and provided free meals. This defense fails for the reasons stated *supra*.

*Child Labor*

The undisputed evidence presented at trial showed that at the time plaintiff began its investigation, defendants were employing two fifteen-year-olds who regularly worked past 9:00 p.m. They stopped doing so shortly after being informed that they were in violation of the law.

*Records*

Regulations promulgated by the Wage and Hour Division require employers covered by the Act to maintain payroll records which include, for each employee, his or her full name, home address, date of birth if under 19, sex and occupation in which employed, rate and basis of pay, and date of payment and pay period covered. 29 C.F.R. § 516.2 (1989). The records submitted at trial do not meet these requirements.

## REMEDIES

*Restitutionary Injunctive Relief*

■■■ Plaintiff seeks injunctive relief to restrain withholding of back wages, a prospective injunction restraining future violations and liquidated damages in an amount equal to the back wages due. Plaintiff has provided the court with detailed calculations of the amount of back wages due each employee. The court finds that these calculations are substantiated by the records of defendants and the testimony regarding the approximate amount of non-tipped duties performed on each workday.[3] Except for defendants' denial that four busboys were not paid minimum wages and their argument for general reductions in the amount due because employees were paid for free time and were furnished meals, they have not disputed the accuracy of plaintiff's calculations. Defendants argue, however, that they should not be required to pay back wages since they acted in good faith, did not intend to violate the law, and relied on a publication of the Wage and Hour Division which they interpreted to mean that they

3. The court finds that plaintiff's estimate of one hour and fifteen minutes each working day as the amount of time spent by waitresses engaged in non-tipped duties to be a fair and reasonable one.

were exempt from FLSA coverage. At trial, Fred Bishop testified that when he first opened the Vicksburg restaurant, he contacted the Wage and Hour Division, which offered him no help other than to send him a publication entitled "Handy Reference Guide to the Fair Labor Standards Act," WH Publication 1282 (1983). Mr. Bishop testified that he relied on a statement therein that "employees of certain individually owned and operated small retail or service establishments not part of a covered enterprise" are exempt from the Act's minimum wage and overtime requirements. However, defendants' good faith is immaterial, because the purpose of an injunction awarding back wages is not to punish the employer but to compensate the employee. *Donovan v. Brown Equipment & Service Tools, Inc.,* 666 F.2d 148, 157 (5th Cir.1982). Furthermore, because of the purposes of the Act, this court has "little room for the exercise of discretion not to order reimbursement." *Mitchell v. Robert de Mario Jewelry, Inc.,* 361 U.S. 288, 296, 80 S.Ct. 332, 337, 4 L.Ed.2d 323 (1960), *quoted in Brown Equipment,* 666 F.2d at 157 n. 14; *see also Donovan v. Grantham,* 690 F.2d 453, 456 (5th Cir.1982) (discretion to deny restitutionary injunction severely limited). The court concludes that an injunction restraining the withholding of back wages, in the amounts and to the employees designated by plaintiff, subject to the exceptions discussed *infra,* should be issued.

## Liquidated Damages

■ The FLSA provides that any employer who violates the minimum wage and overtime provisions shall be liable for liquidated damages in an amount equal to the unpaid wages. The only defense to liability is the statutory defense set forth in 29 U.S.C. § 260 (1985), which requires a showing by the employer that his violation was "both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." *Reeves v. International Tel. and Tel. Corp.,* 616 F.2d 1342, 1357 (5th Cir.1980) (quoting *Barcellona v. Tiffany English Pub. Inc.,* 597 F.2d 464,

468 (5th Cir.1979)). A violation of the FLSA is presumed to willful, and this presumption can be rebutted only by "positive and compelling proof of good faith." *Id.* at 1353. The court is not persuaded by the testimony of Fred Bishop, discussed *supra,* that defendants acted in reasonable good faith and therefore concludes that defendants are liable for liquidated damages to each employee, subject to the exceptions set forth *infra,* in an amount equal to the back wages due.

## Recovery by David Emerson and Andrew Eargle

■ The court has determined that two employees, David Emerson and Andrew Eargle, were not paid in accordance with the Act but nevertheless testified to the contrary at trial. While this court recognizes, as stated previously, that its discretion not to order payment of back wages and liquidated damages is very limited, the court concludes that it has, as a court of equity, the discretion to deny these two employees any recovery under the unique circumstances presented here. These employees precluded themselves from recovering amounts to which they would otherwise be entitled by testifying (albeit falsely, in the court's opinion) that they were paid a minimum wage during the period in question. Nevertheless, it would not be in keeping with one of the purposes of the FLSA—the public interest in preventing employers from profiting by their failure to comply with the FLSA, *see Brown Equipment,* 666 at 156—to allow defendants to retain for themselves these monies. Therefore, the court will order that defendants pay into the registry of this court an amount equal to the back wages and liquidated damages which would otherwise go to these two employees.

## Prospective Injunctive Relief

■ Plaintiff seeks a prospective injunction restraining future violations of the Act's minimum wage, overtime, child labor and recordkeeping provisions. The issuance of a prospective injunction is within the discretion of the trial court, subject to

the considerations of the "previous conduct of the employer and the dependability of his promises for future compliance." *Dunlop v. Davis*, 524 F.2d 1278, 1281 (5th Cir. 1975). The evidence presented by plaintiff revealed no minimum wage, overtime or child labor violations since 1987, and the records kept by defendants since 1989 appear to be in compliance with the applicable regulations. The court concludes that a prospective injunction is not in order.

## CONCLUSION

Accordingly, the court will grant a restitutionary injunction and liquidated damages in accordance with this opinion. A separate judgment shall be entered pursuant to Federal Rule of Civil Procedure 58.

SO ORDERED.