[No. G029530. Fourth Dist., Div. Three. Mar. 14, 2003.]

KARLA JAMESON, Plaintiff and Respondent, v.
FIVE FEET RESTAURANT, INC., Defendant and Appellant.

**COUNSEL**

Wesierski & Zurek and Christopher P. Wesierski for Defendant and Appellant.

Law Office of Robert D. Coviello, Robert D. Coviello and Perla J. Duvel for Plaintiff and Respondent.

**OPINION**

**FYBEL, J.**—Five Feet Restaurant, Inc., appeals from (1) the judgment after a jury trial awarding former employee and server Karla Jameson the sum of $1,075 for Five Feet's violation of Labor Code section 351; and (2) the permanent injunction issued by the trial court requiring Five Feet to comply with Labor Code section 351.

Labor Code Section 351 prohibits an "employer" or "agent" from collecting, taking or receiving any gratuity given to an employee by a patron. (All further California statutory references are to the Labor Code.) By special verdict, the jury found Five Feet maintained a policy that allowed its owners or agents to collect, take or receive a gratuity, or part of a gratuity, given by patrons to Jameson. The jury also concluded Five Feet's owners or agents took or received the sum of $1,075 in tips that Jameson received during her employment with Five Feet.

The trial court entered judgment on the jury's verdict and also issued a permanent injunction that prohibited Five Feet from further violations of section 351 and required Five Feet to pay to other servers gratuities taken by Five Feet's owners or agents.

Five Feet contends (1) substantial evidence did not support the judgment because Five Feet's floor managers were not agents as defined by section

350, and (2) the trial court abused its discretion by issuing a permanent injunction because Five Feet "has indicated that it desires to comply with the law."

Tip pooling is permissible under California law if an employer or agent does not take any part of a gratuity given to an employee by a patron or otherwise violate section 351. Substantial evidence shows Five Feet's floor managers were agents as defined by section 350, subdivision (d), and Five Feet's policy required Jameson and other servers to give the floor manager 10 percent of their nightly tips in violation of section 351. In addition, Five Feet failed to carry its burden of demonstrating that the trial court's issuance of a permanent injunction constituted an abuse of discretion. Therefore, we affirm.

## BACKGROUND

Five Feet is an upscale restaurant located in Laguna Beach. On February 14, 1999, Karla Jameson was interviewed by Five Feet floor manager Beauregard Stinnette for a position as a server. Stinnette hired Jameson "on the spot" and she began work on February 16. During Jameson's employment, Five Feet maintained a policy that required its servers to give 10 percent of the tips they received nightly from patrons to the floor manager. The floor manager, also referred to as "the door," supervised the servers, acted as host, greeted customers, set up the reservation sheet and seating arrangement, and assisted in servicing tables. Every night that Jameson worked at Five Feet, she gave 10 percent of her tips to the floor manager. Ten percent of her tips averaged between $40 and $50 nightly. Jameson was disciplined once for failing to properly tip "the door" a full 10 percent of her tips.

Jameson's brief tenure at Five Feet was troubled. She complained to Stinnette that a coworker sexually harassed her and believed that Michael Kang, an owner of Five Feet, retaliated against her for making the complaint. Jameson resigned on July 26, 1999.

On May 4, 2000, Jameson filed a complaint against Five Feet, Kang and a coworker for sexual harassment, failure to prevent sexual harassment, sexual battery, retaliation, constructive termination in violation of public policy, intentional infliction of emotional distress, violation of public policy (unpaid wages), and unfair competition. On December 1, 2000, Jameson filed a first amended complaint that added a claim for conversion and realleged the same claims contained in her original complaint. Jameson's claim for unpaid wages was based in part on her allegation that Five Feet's

tipping policy violated section 351, and her claims for unfair competition and conversion were solely based on Five Feet's alleged section 351 violation. Before trial, Jameson dismissed the constructive termination and conversion claims.

Jameson's remaining claims were tried before a jury. The jury found that Jameson had not been sexually harassed by a coworker, but determined Kang retaliated against her for complaining about the alleged sexual harassment. The jury also determined that Five Feet failed to fully compensate Jameson for preshift and postshift work. The jury found that Five Feet maintained a policy that allowed its owners or agents to collect, take, or receive gratuities, or parts of gratuities Jameson received from patrons, and that Five Feet's owners or agents took or received a total of $1,075 of Jameson's tips.

The trial court entered judgment on the jury's special verdict on June 5, 2001. The trial court also issued a permanent injunction that (1) prohibits Five Feet from requiring or permitting servers to pay any portion of their tips to "any individual who hires, fires, supervises, directs *or* controls any other employee in the restaurant including, but not limited to, any owner, manager, assistant manager, floor supervisor, maitre d', or any other individual that hires, fires, supervises, directs *or* controls the acts of other employees in any manner or for any length of time, regardless of whether that individual also performs some services tantamount to serving, and/or assisting in the service of, patrons of [Five Feet]"; (2) prohibits Five Feet from requiring employees to arrive for work before the scheduled start time without compensation; (3) requires Five Feet to pay employees for labor and services provided, including attendance at employee meetings; and (4) requires Five Feet to identify and locate each server from May 1, 1996, to June 5, 2001, notify those servers that they may be owed additional compensation due to Five Feet's Labor Code violations, pay them the amounts owed, and report the status of Five Feet's progress in this process to the trial court.

Five Feet appealed the judgment and the issuance of the permanent injunction.

## DISCUSSION

I. *Substantial Evidence Supports the Jury's Verdict That Five Feet Required Tip Sharing with an Agent as Defined in Section 350, Subdivision (d), in Violation of Section 351.*

 Five Feet attacks the judgment on the ground that the evidence presented at trial did not establish Five Feet's floor managers fit within the

definition of employer or agent contained in section 350. Therefore, Five Feet contends it did not violate section 351. We disagree.

"When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. *If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.*" (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874 [197 Cal.Rptr. 925].) The substantial evidence standard of review is applicable to appeals from both jury and nonjury trials. (*Alderson v. Alderson* (1986) 180 Cal.App.3d 450, 465 [225 Cal.Rptr. 610].)

Tip pooling is permissible as long as it does not run afoul of the prohibitions contained in section 351. (*Leighton v. Old Heidelberg, Ltd.* (1990) 219 Cal.App.3d 1062, 1067 [268 Cal.Rptr. 647].) Section 351 provides in relevant part: "No employer or agent shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron, or deduct any amount from wages due an employee on account of a gratuity, or require an employee to credit the amount, or any part thereof, of a gratuity against and as a part of the wages due the employee from the employer. Every gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for."

Section 350 sets forth definitions for the words "employer" and "agent" as they are used in section 351. Section 350, subdivision (a) provides: " 'Employer' means every person engaged in any business or enterprise in this state that has one or more persons in service under any appointment, contract of hire, or apprenticeship, express or implied, oral or written, irrespective of whether the person is the owner of the business or is operating on a concessionaire or other basis." Section 350, subdivision (d) states the term " '[a]gent' " means "every person other than the employer having the authority to hire *or* discharge any employee *or* supervise, direct, *or* control the acts of employees." (Italics added.)

Five Feet admits that it required servers to pay the floor manager 10 percent of the tips they received each evening. Thus, the issue is whether the floor manager position falls within the definition of "employer" or "agent" under section 350.

We conclude the testimony at trial regarding the job duties and responsibilities of floor managers constitutes substantial evidence that the floor manager position is within the definition of "agent" under section 350, subdivision (d). This evidence includes the following: (1) the floor manager's duties include scheduling servers' stations, disciplining servers, hiring employees, and recommending the discharge of employees; (2) the floor manager supervises servers on a "daily basis" even while assuming host duties; (3) after the restaurant opens, the floor manager assumes host duties, such as greeting and seating guests, and continues to supervise servers; (4) Stinnette hired Jameson without consulting Kang; (5) Kang admitted that the floor manager has supervisory duties, and is referred to as a supervisor in Five Feet's training manual; (6) Kang testified that Stinnette supervised servers when Kang was present at, or away from, the restaurant; and (7) Kang further testified that the floor managers have the authority to discipline employees without Kang's consent, although they usually inform Kang and get his consent on such matters.

Thus, substantial evidence supports the finding that Five Feet's floor managers have the authority to hire or discharge or supervise, direct or control other employees' acts within the meaning of section 350, subdivision (d).

Five Feet argues that although the floor managers are involved in hiring, discharging, and supervising employees, they also serve patrons and thereby earn a share of the tips. Five Feet contends, therefore, the floor managers do not fall within the definition of agent in section 350. But the definition of agent under section 350 does not include a requirement that an agent's duties exclusively consist of hiring, discharging, or supervising employees. Section 350 does not even require that an agent spend the majority of his or her time performing such functions. Therefore, it is irrelevant that the floor managers at Five Feet perform other duties in addition to the functions described in section 350, subdivision (d).

In the introductory portion of its opening brief, Five Feet twice mentions the trial court's refusal to give Five Feet's proposed jury instruction regarding permissibility of tip pooling. Five Feet's opening brief does not contain any argument that the court committed instructional error. Neither Five Feet's "Summary of Argument and Issues Presented" in its opening brief nor its reply brief refers to this proposed instruction. The jury instruction proposed by Five Feet stated in part: "Tip pooling is permissible if the co-employee directly serves a table, performing such tasks as greeting and seating patrons, taking orders, filling water glasses, advising on wine or other beverages, opening wine bottles, pouring wine, bringing beverages to

the table, bringing bread or other starters including kim chi, bringing plates of food, removing plates of food and cleaning a table. Tip pooling with the maitre d'/manager is permissible so long as that person directly serves tables and does not solely perform managerial functions, like setting the budget, making personnel decisions, and binding the restaurant to major contracts." For the reasons explained above, this proposed instruction was in conflict with sections 350 and 351. Therefore, the trial court correctly refused to give that instruction to the jury.

Five Feet argues the floor managers' decisions are subject to Kang's final approval. Substantial evidence showed that the floor managers made hiring decisions, including Stinnette's hiring of Jameson, without Kang's consent. Substantial evidence also showed the floor managers were expected to supervise servers, regardless of whether Kang was present in the restaurant. Therefore, the evidence established that the floor manager position falls well within the definition of an agent under section 350.

Five Feet cites federal authorities interpreting the Fair Labor Standards Act (FLSA) in support of its argument that floor managers are not prohibited from tip pooling under California law. The FLSA permits tip pooling "among employees who customarily and regularly receive tips." (29 U.S.C. § 203(m).) Under certain conditions, the FLSA also permits "tip credits" that allow an employer to pay less than minimum wage to a tipped employee by including the amount the employee receives in tips (up to 50 percent of the minimum wage) in the calculation of the employee's wage. (*Kilgore v. Outback Steakhouse of Florida, Inc.* (6th Cir. 1998) 160 F.3d 294, 298.)

The California Legislature, however, has expressly forbidden the tip pooling sought by Five Feet. Under section 351, tip pooling is only permitted among employees who are neither employers nor agents under section 350. Section 351 also expressly prohibits tip credits: "No employer or agent shall . . . deduct any amount from wages due an employee on account of a gratuity, or require an employee to credit the amount, or any part thereof, of a gratuity against and as a part of the wages due the employee from the employer." (§ 351.) Because section 351 imposes prohibitions on tip pooling not contained in the FLSA, the federal authorities cited by Five Feet are inapplicable.

II. *The Trial Court's Issuance of the Permanent Injunction Did Not Constitute an Abuse of Discretion.*

"The trial court's decision to grant a permanent injunction rests within its sound discretion and will not be disturbed on appeal absent a

showing of a clear abuse of discretion." (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 912 [117 Cal.Rptr.2d 631].) The burden is on the complaining party to establish an abuse of discretion. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331 [216 Cal.Rptr. 718, 703 P.2d 58].) Five Feet has failed to meet its burden of demonstrating that issuance of the permanent injunction constituted an abuse of discretion.

Five Feet argues the trial court's issuance of the permanent injunction was an abuse of discretion solely because "Five Feet has indicated that it desires to comply with the law." Five Feet does not cite to the record or to any California authority in support of its argument. Five Feet even failed to cite any evidence in the record showing a promise by Five Feet to comply with section 351 in the future.

Five Feet cites to two out-of-state federal cases brought under the FLSA, *Dole v. Bishop* (S.D.Miss. 1990) 740 F.Supp. 1221 and *Marshall v. Krystal Co.* (E.D.Tenn. 1978) 467 F.Supp. 9, in which two federal district courts denied requests for permanent injunctions. These two cases only acknowledge the correct general proposition that the discretion of a trial court to issue a permanent injunction is "subject to the considerations of the 'previous conduct of the employer and the dependability of his promises for future compliance.'" (*Dole v. Bishop, supra,* 740 F.Supp. at pp. 1229-1230.)

## DISPOSITION

The judgment and the permanent injunction order are affirmed. Jameson shall recover her costs incurred in this appeal.

Sills, P. J., and Rylaarsdam, J., concurred.