Filed 11/18/14  Escalera v. Waller CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JOSE LUIS ESCALERA,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>MICHAEL WALLER,<br><br>  Defendant and Respondent. | H039099<br>(Santa Clara County<br>Super. Ct. No. 1-09-CV158837) |

After he was injured while trimming a tree at the home of Yeh Juin Tung, plaintiff Jose Luis Escalera sued both his employer, Michael Waller, and Tung for negligence. Tung obtained summary judgment, while the case against Waller proceeded to a court trial.  The trial judge found Waller not negligent and entered judgment in his favor. Plaintiff appeals, contending that the court erred in finding that plaintiff was excluded from workers' compensation coverage under Labor Code section 3352, subdivision (h).[1] We disagree and affirm the judgment.

---

[1]  All further statutory references are to the Labor Code except as otherwise indicated. Under section 3352, subdivision (h) the term "employee" does not include "Any person defined in subdivision (d) of Section 3351 who was employed by the employer to be held liable for less than 52 hours during the 90 calendar days immediately preceding the date of the injury . . . ."  Section 5705, subdivision (a) places the burden on the employer to show "[t]hat an injured person claiming to be an employee was an independent contractor or otherwise excluded from the protection of this division where there is proof that the injured person was at the time of his or her injury actually performing service for the alleged employer."

*Background*

Both parties testified at the court trial.  On September 16, 2008, Tung hired Michael Waller, who owned Waller Tree Care, to perform services that included removing one tree and trimming four others.  The price for the work was $400.  Waller did not have workers' compensation insurance, and he was not licensed as a contractor at that time, though he was licensed by the time of trial.  He used plaintiff and a few others to "help" him at times, but he did not consider any of them employees.  According to Waller's trial testimony, plaintiff helped him "once or twice a week, maybe; if that." They initially met at Home Depot, but after the first couple of times plaintiff would just show up at Waller's house "on a random basis" and ask if Waller needed help.  Waller paid plaintiff from $80 to $100 a day, or $120 if they worked more than eight hours.

By Waller's estimate, plaintiff worked for him about 20 times between 2006 and 2008.  In the three months preceding the accident, plaintiff had worked for him about three or four times.  He did not work 52 hours or more during that period, because Waller felt that he could not afford to pay a helper then.  He was experiencing a "stressful" time financially, and he had let his liability insurance lapse in May of that year because he could not pay the premium.

On October 6, 2008, Waller and plaintiff began the work at Tung's home.  Waller explained to plaintiff what he intended to do and indicated the tree he intended to remove. Plaintiff's assignment was to clear brush and stack the debris in Waller's trailer; Waller did not allow him to trim trees because his customers were "picky."

Waller then began sharpening the blades of his chain saw while plaintiff removed the ladder from the truck and took it into the backyard.  Waller did not see plaintiff again until five to 10 minutes later when he heard plaintiff call out to him from the backyard. The ladder was not tied to the tree.  Plaintiff was on his hands and knees, with a four-inch cut on his head, and four or five droplets of blood were on the ground.  Plaintiff told

2

Waller that he was all right—he did not complain of any other injuries—but Waller believed that plaintiff needed stitches. The medics who responded also insisted, over plaintiff's protest, that plaintiff needed stitches, and they took him to the hospital.

Waller was surprised that plaintiff had fallen off a ladder, because he had not asked plaintiff to climb the tree; plaintiff's responsibility was "just to drag brush and put it on the trailer." He would never have asked plaintiff to climb a ladder or trim or remove any trees. When he himself climbed a tree, he secured the ladder by tying it to the tree.

Two to three weeks later plaintiff appeared at Waller's house with a "crowd of people" and asked for compensation for the time he had not been working. Waller did not remember whether he had paid plaintiff for the work he had done on the day he was injured. After his injury plaintiff continued to solicit jobs and perform work for one of Waller's clients.

In his testimony Waller insisted that he had not underbid the Tung job. He expected that it would take about six hours, and in the existing economy he considered $400 "acceptable" for him to "make . . . ends meet." Waller also stated that he had never advertised himself as being a licensed contractor or even told a customer that he was a contractor.

Plaintiff offered a different account of his experience with Waller. He testified that he had trimmed at least three trees of 14 or 15 feet, using a six-foot ladder and a handsaw, both of which Waller showed him how to use. He often also trimmed bushes that were low to the ground. Two or three times Waller left plaintiff alone on a job for three or four hours while plaintiff cleaned up debris. Plaintiff thought that for "[possibly] about three or four months consecutively" before the accident he worked for Waller every week between 20 and 50 hours a week. Waller paid him $100 a day, sometimes up to $120 when the work exceeded 10 hours. Plaintiff recalled working one to two days

before October 6, 2008 and the week before that, two and one-half days in a different location.

On the day of the accident, Waller told plaintiff which trees he was going to trim and what ladder plaintiff should use for which trees. Plaintiff said that Waller gave him the handsaw to start doing the tree trimming while he was sharpening the chain saw. Waller told plaintiff to use the large ladder for the tree, which was 20 to 25 feet tall.[2] Plaintiff testified that he climbed between nine and 12 feet up the ladder and sawed eight or nine branches before he fell. Waller had not told him to use a rope to secure himself or the tree. On all previous occasions he used the smaller ladder; he climbed the larger one only occasionally, just to hand Waller tools.

By the time of trial plaintiff said his head, back, and right shoulder still hurt, he had blurred vision and drowsiness, he had buzzing in his right ear, and his right arm was weak. He got headaches when frustrated. Plaintiff maintained that he was unable to perform any but "light" jobs and had trouble lifting with his right arm, even though a previous witness had watched him do very "laborious" work at her house, including the delivery and placement of large, heavy stones on her property.

According to plaintiff, Waller never paid him for the work he did on October 6, 2008, even though he went to Waller's house twice to ask for the money. Plaintiff believed that Waller's $400 charge for the Tung job was too low; it should have been $800 to $900.

On cross-examination plaintiff was confronted with his deposition testimony, in which he had said that he had never done tree trimming himself before the accident; his

---

[2] This description contrasted with Waller's estimate of the height of the tree as being about 12 to 14 feet high, two to three feet higher than the ladder, which was 12 feet before being extended.

4

primary duty was only to gather the branches that fell as Waller cut them and put them in the trailer. Other contradictions led plaintiff to admit that his memory was "really vague about what happened back then. I just can't remember." In his deposition plaintiff had said that he had not worked at all since the accident, while at trial he described light jobs he was able to do along with selling tools. At trial he admitted that in his deposition he had testified that he had not worked since the accident because no one cared about what was going to happen to him and he needed money for his over-the-counter pain medicine. In his deposition he also said he was staying in the United States because he was "waiting to see what is going to happen" with the lawsuit. At trial plaintiff answered "I think so" when asked whether he understood that it was important to the success of his lawsuit that he estimate the value of the work he did for Waller at an amount greater than $500.

### Procedural History

Plaintiff initiated this action in December 2009, alleging negligence against both Waller and Tung. In the first cause of action he alleged that "defendants negligently, [*sic*] instructed, trained, controlled, managed and supervised the Complex [*sic*] in such a way so [*sic*] as to cause plaintiff's injury as a result of falling from a ladder while cutting the limb of [a] tree at the request of defendants. At said time and place defendants negligently instructed, controlled and supervised the plaintiff in the conduct of trimming of trees, thereby resulting in injury to plaintiff as alleged herein. On said time and place, defendants negligently instructed the plaintiff to perform the tree trimming under unsafe conditions, without regard to the safety of the conditions, and in a negligent and unsafe manner." In the second cause of action plaintiff repeated his negligence allegations but also noted that "Defendants did not have worker's compensation insurance at the time of the incident as required by California State law."

Tung obtained a summary judgment ruling in May 2012 and judgment was entered in his favor on July 13, 2012. The court trial against Waller began the following week.

5

Plaintiff contended that Waller was required to be licensed because the work was "valued" at more than $500 and because he performed "non-incidental tree pruning" of trees greater than 15 feet high.[3] (Bus. & Prof. Code, §§ 7048, 7026.1.) Because a license was required, plaintiff argued, he was Waller's employee rather than an independent contractor. And as Waller had no workers' compensation insurance, plaintiff maintained that Waller was presumed to be negligent and was liable in tort for plaintiff's injuries. (§§ 3708, 2750.5.)

After hearing three days of testimony and receiving written argument, the court agreed with plaintiff that he was an employee, not an independent contractor, on the disputed occasion. (See §§ 3353, 3357.) For purposes of workers' compensation coverage, however, the court found that plaintiff was not an employee within the meaning of section 3352, subdivision (h). That provision excludes from the definition of "employee" a person who worked less than 52 hours or earned less than $100 in the preceding 90 days. Even though plaintiff received more than $100 in the 90 days preceding the accident, the court found that he worked for Waller less than 52 hours during this period. Consequently, the governing statute excluded plaintiff from the workers' compensation system. Waller, meanwhile, was found to be a "contractor"

---

[3]    Business and Professions Code section 7048 exempts a person from the contractor's license requirement (see Bus. & Prof. Code, § 7000 et seq.) when the contract price for the work totals less than $500, "that work or operations being considered of casual, minor, or inconsequential nature." Former Business and Professions Code section 7026.1, subdivision (d) (now section 7026.1, subdivision (a)(4)) defines "contractor" to include "Any person not otherwise exempt by this chapter, who performs tree removal, tree pruning, stump removal, or engages in tree or limb cabling or guying. The term contractor does not include a person performing the activities of a nurseryperson who in the normal course of routine work performs incidental pruning of trees, or guying of planted trees and their limbs. The term contractor does not include a gardener who in the normal course of routine work performs incidental pruning of trees measuring less than 15 feet in height after planting."

within the meaning of former Business and Professions Code section 7026, subdivision (d), based on the nature of the tree work he performed. But he was not required to be licensed for the work because the contract price for the Tung job was less than $500, and Waller did not underbid the job in order to avoid the licensing requirement. (Bus. & Prof. Code, § 7048.) For the same reason the court found that Waller could not be liable under section 2750.5 because the application of that statute was predicated on the performance of services "for which a license is required."

Addressing the specific allegations of negligence, the trial court concluded that Waller "bore no responsibility for the accident" whether viewed under the workers' compensation system or as a tort action under sections 2800 and 2801. Even if Waller was presumed to be negligent under section 3708, he had overcome that presumption. The court accordingly entered judgment for Waller. Plaintiff filed a timely notice of appeal.

*Discussion*

The focus of this appeal is the trial court's determination that plaintiff was not an "employee" within the meaning of the Workers' Compensation Act (§ 3200 et seq.)—specifically, section 3352, subdivision (h).[4] Plaintiff contends that the trial court should have found him to be an "employee" entitled to workers' compensation coverage. Waller, plaintiff argues, did not meet his burden of proof on the issue of whether plaintiff worked less than 52 hours within the 90 days preceding the accident, one of the factual predicates for exclusion from coverage under section 3352.

---

[4] In his appellate briefs plaintiff has also challenged the earlier judgment in Tung's favor, entered by a different judge of the superior court after granting Tung's summary judgment motion. That proceeding is the subject of plaintiff's appeal in H038765, which we have addressed in a separate opinion.

"Under the Workers' Compensation Act, coverage [extends only] to injuries suffered by an 'employee.' (§§ 3600, 3700; [citation].) For workers' compensation purposes, the term 'employee' refers to 'every person in the service of an employer under appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed, and includes' enumerated classes of workers. (§ 3351, see also § 3351.5.) Thus, '[a]ny person rendering service for another, other than as an independent contractor, or unless expressly excluded herein, is presumed to be an employee.' (§ 3357.)" (*County of Kern v. Workers' Comp. Appeals Bd.* (2011) 200 Cal.App.4th 509, 517-518.)

Plaintiff acknowledges that this court's review of the underlying factual finding must be conducted in accordance with the substantial evidence standard; but he maintains that the trial court's verdict was based on Waller's testimony, which consisted of "pure guesswork and speculation." "Specifically, Waller testified that 'it was a rough time financially' (a loosely recalled fact), and speculates [*sic*] from this fact that he 'just did not think he could have been able to pay anybody at the time (a pure conjecture), and then further speculates that he must therefore have employed Escalera less than 52 hours in the 90 days preceding the accident." According to plaintiff, Waller contradicted himself by admitting that he did employ plaintiff about three or four days during this period, that he employed plaintiff on the day of the accident, and that he was unable to handle every job by himself. Plaintiff offers alternative estimates by calculating the number of hours in four days of work, based on eight-, 10-, or 12-hour days. He then concludes, "The simple truth is that, based on Waller's evidence, we do not know how much [plaintiff] worked in the in the [*sic*] 90 days preceding his injury." In plaintiff's view, Waller thus failed to meet his burden to show that plaintiff worked less than 52 hours within 90 days of the injury.

8

This argument does not present a question involving construction of the Workers' Compensation Act, as plaintiff suggests, but calls for an application of the substantial evidence standard to a critical fact found true by the court as trier of fact. Accordingly, this court's role is only to determine "whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. If such substantial evidence [is] found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874, italics omitted.) This standard is applied to appeals from both jury and nonjury trials. (*Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th 138, 143.)

According to these long-settled principles, the weight and credibility of Waller's testimony were issues for the court, as trier of fact, to resolve. Although Waller could only estimate the number of hours plaintiff worked for him in the 90 days before the accident, Waller explained that he could not have employed anyone very much because finances were tight then. Notwithstanding plaintiff's admission that he had lied in his deposition in order to secure a judgment in this case, the court found plaintiff credible on some points: for example, plaintiff was an employee, not an independent contractor, and he earned more than $100 during the 90-day period. But the court did not find plaintiff believable with respect to the scope of the work he was authorized to do, the value of the tree work for which Waller had contracted with Tung, and, most significantly, the number of hours plaintiff had worked for Waller in the months before the accident. It was within the trial court's province to make these determinations. As the reviewing court, our role is not to reweigh this testimony or re-evaluate Waller's credibility unless his testimony was "physically impossible or inherently improbable and such inherent

improbability plainly appears." (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1204; see also *Oldham v. Kizer* (1991) 235 Cal.App.3d 1046, 1065 [testimony may be rejected only when it is unbelievable per se, physically impossible or wholly unacceptable to reasonable minds].) It suffered from neither of these conditions. Nor, to the extent that the court was required to draw inferences from Waller's testimony, can we say that the court's calculation of plaintiff's hours was unreasonable in light of the entire record or based upon "suspicion, imagination, speculation, surmise, conjecture or guesswork." (*Beck Development Co. v. Southern Pacific Transportation Co.*, *supra*, at p. 1204.)

Substantial evidence supports the trial court's findings on this factual issue. Waller testified that plaintiff worked for him "[a]round 20 times" in the two years before the accident. In the preceding three months, he worked for Waller "three to four times." Waller did not believe it could have been more often than three or four times because he was then experiencing "a rough time" financially and would not have been able to pay a helper. The trial court accepted Waller's estimate over plaintiff's testimony that he worked for Waller 70 hours in August alone, as well as 34 hours in September. Supplementing Waller's testimony was the insurance policy that had lapsed in May 2008 because Waller "just couldn't pay it at that time because things were so slow." The trial court found Waller's testimony adequate to support the conclusion that plaintiff worked fewer hours than the 52 necessary to qualify him as an "employee" for purposes of workers' compensation coverage.

Because plaintiff was properly found not to come within the provisions of the Workers' Compensation Act, it is unnecessary to determine whether Waller's failure to maintain workers' compensation insurance was prejudicial. We only note that, contrary to plaintiff's assertion, the trial court did not contravene the statutory presumption of

10

employer negligence by finding contributory negligence. (§ 3708.)[5] Plaintiff concedes that "an employer can exonerate himself by proving an absence of negligence on his part." Here Waller did just that. The court did not find that Waller met the standard of care *because* plaintiff was himself negligent; the court simply found that Waller was not negligent in the first place independently of what plaintiff did.[6] Thus, even if employer negligence is presumed here under section 3708, Waller's evidence was sufficient to satisfy the court that the presumption had been rebutted.

*Disposition*

The judgment is affirmed.

---

[5] Under section 3708 the failure to maintain worker's compensation insurance may subject the employer to a presumption "that the injury to the employee was a direct result and grew out of the negligence of the employer, and the burden of proof is upon the employer, to rebut the presumption of negligence. It is not a defense to the employer that the employee was guilty of contributory negligence, or assumed the risk of the hazard complained of, or that the injury was caused by the negligence of a fellow servant. No contract or regulation shall restore to the employer any of the foregoing defenses. [¶] This section shall not apply to any employer of an employee, as defined in subdivision (d) of Section 3351, with respect to such employee, but shall apply to employers of employees described in subdivision (b) of Section 3715, with respect to such employees."

[6] In finding Waller not responsible for plaintiff's injury, the court stated: "Waller was no[t] present at the scene of the accident to direct the actions of the [p]laintiff. Waller testified without contradiction that he always practiced the safe use of the ladder by tying it to the tree, having someone hold the ladder, and using a tool harness. Plaintiff did none of these actions. As explained in *Spivak v. Independent Sash & Door Co*. [(1916) 173 Cal. 438, 440,] when employees, 'for their [own] convenience, refuse to use [safer methods]' and adopt methods involving a needless risk, the employer is not liable.' Here the [p]laintiff acted on his own, without authority to act. His job was to take the ladder to the [backyard]. Without knowledge by Waller and without taking normal and necessary precautions, [p]laintiff climbed the ladder. He fell and no one is to blame but himself."

11

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.


_____

PREMO, J.