Filed 6/27/25  In re M.M. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re M.M., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>B.G.,<br><br>    Defendant and Appellant. | G064998<br><br>(Super. Ct. No. 24DP1214)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Julie Anne Swain, Judge. Affirmed.

Manis Thakkar, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

\*          \*          \*

This dependency case concerns M.M. (the child). B.G., her mother (Mother), and I.M., her father (Father), divorced years ago. Father was granted sole legal and physical custody of the child, while Mother remarried and had two other children (the half-siblings) with her new husband (J.G.). Orange County Social Service Agency (SSA) initiated this dependency case after a domestic violence incident between Mother and J.G., which the child witnessed while visiting Mother. The dependency case only lasted a few months. At the disposition hearing, Mother requested joint legal custody of the child. The juvenile court denied this request and issued exit orders that kept sole custody of the child with Father. Mother appeals, arguing there is insufficient evidence in the record to support the court's finding that awarding Father sole legal custody was in the child's best interests. We disagree and affirm the order.

FACTS AND PROCEDURAL HISTORY

*A. The Dependency Petition*

On September 27, 2024, SSA filed an application for a protective custody warrant (the application) for the child and the half-siblings. The application was based on ongoing domestic violence between Mother and J.G. dating back to 2015. The most recent incident had occurred about a week prior to the application, when the child was visiting Mother's home. The application stated the child "resides in the care of [Father]" but "maintains regular visits with [Mother] and . . . had witnessed other instances of domestic violence between [Mother] and [J.G]." The application requested that the child, who was 10 years old at the time, be removed from Mother and remain in Father's care and custody.

The juvenile dependency court granted the application.

In connection with the application, SSA interviewed the child, Mother, and Father. The child stated that Mother and Father were divorced. She lived with Father but spent weekends with Mother, who lived with J.G. The child reported having enough food and clothing and that she was taken to the doctor and dentist as needed. The child was aware of the domestic violence history between Mother and J.G. According to her, Mother and J.G. "argued multiple times daily when she [was] in [their] home." After the latest incident, Mother had told the child that she planned to stay with J.G. According to SSA's reports, "[t]he child then stated with a mad tone 'she always goes back with him.'"

Father reported that he had full legal and physical custody of the child. There was no court-ordered visitation schedule for the child, but he and Mother had created an informal one. Father stated that due to the latest domestic violence incident, he planned "on the child not seeing [Mother] while she works on herself," but he would consider allowing them to have supervised visitation and phone calls. Mother confirmed that Father had full physical and legal custody of the child, who lived with Father during the week and visited Mother from Friday afternoon to Sunday morning.

On October 1, 2024, SSA filed a jurisdictional petition (the petition) under Welfare and Institutions Code section 300, subdivision (b)(1), for the child and the half-siblings due to the ongoing domestic violence between Mother and J.G.[1] Among other things, the petition alleged that Mother and J.G. had engaged in domestic violence against each other since

[1] All further undesignated references are to the Welfare and Institutions Code.

3

2015. Both had been arrested several times for domestic violence, and both had "obtained restraining orders against each other multiple times."

A hearing on the petition took place the next day. The juvenile court found the petition stated a prima facie case and that "[c]ontinuance in [Mother's] home [was] contrary to the child's welfare." It ordered the child to remain with Father but allowed Mother 10 hours of supervised visitation per week.

On October 24, 2024, the juvenile court found the petition's allegations true by a preponderance of the evidence. About one month later, the court granted Mother one night of unsupervised visitation every other weekend at the maternal grandparents' home from Saturday at 9:00 a.m. to Sunday at 9:00 a.m.

B. SSA's Reports

SSA interviewed the child several times prior to the disposition hearing. The child stated she had good grades and denied ever getting in trouble at school. She also reported that she was "'happy,'" had friends at school, and was on her school's soccer team. She liked living with Father, felt safe and comfortable in her home, and had enjoyed visits with Mother. She also felt safe with Mother during overnight visits.

Father told SSA he was aware that Mother and J.G. had restraining orders against each other and had "heard they 'always fight' and get back together." In fact, he had been on the phone with the child when law enforcement responded to the last domestic violence incident between them. He also stated that he had once been contacted by law enforcement to pick up the child following a domestic violence incident between Mother and J.G. that had resulted in Mother's arrest. He would not feel comfortable with the child going to Mother's home if she continued her relationship with J.G. SSA noted

4

the child was doing well in Father's care and there were no concerns with his parenting.

SSA's reports showed that Mother had completed a parenting education class and was participating in individual therapy, a 52-week batterer's program, and a personal empowerment program. Likewise, J.G. had completed parenting education and was participating in individual therapy and anger management. Both Mother and J.G. had been cooperative with SSA and had complied with unannounced home visits. SSA's reports also stated that by December 2024, the half-siblings had been returned to the care of Mother and J.G.

SSA recommended that the juvenile court terminate dependency proceedings with exit orders and that Father retain full custody of the child. It explained that Father had "been caring for the child and has sole legal and physical custody of the child. The child has been well under the care of [Father] and has not been exposed to any abuse in his care."

The juvenile court held a disposition hearing on December 12, 2024.  At the hearing, Mother requested joint legal custody of the child. She argued joint legal custody was in the child's best interest to ensure Mother and Father were both involved in significant decisions about the child's welfare, health, education, religion, and extracurricular activities. After the hearing, the court terminated dependency proceedings. But it denied Mother's request for joint legal custody of the child and granted full custody to Father. It found "vest[ing] custody with [Mother] would be detrimental to [the] child and to vest custody with [Father] is required to serve the child's best interest." However, the court increased visitation to allow Mother two nights of unsupervised visits every other week.

On appeal, Mother argues the juvenile court abused its discretion by granting Father sole legal custody.

## DISCUSSION

Under section 362.4, a "'juvenile court has broad discretion to make custody [and visitation] orders when it terminates jurisdiction in a dependency case. (§ 362.4.)'" (*In re J.M.* (2023) 89 Cal.App.5th 95, 112-113.) When making such orders "'the court's focus and primary consideration must always be the best interests of the child.'" (*In re T.S.* (2020) 52 Cal.App.5th 503, 513.) Generally, this means courts should attempt to "'"maximize a child's opportunity to develop into a stable, well-adjusted adult."'" (*In re William B.* (2008) 163 Cal.App.4th 1220, 1227.)

Custody orders made under section 362.4 are reviewed for an abuse of discretion. (*In re J.M.*, *supra*, 89 Cal.App.5th at pp. 112-113.) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712, fns. omitted.)

Here, Mother argues there is insufficient evidence to support the juvenile court's finding that awarding Father sole legal custody was in the child's best interest. She appears to assert that the evidence supports awarding joint legal custody. Specifically, Mother cites her progress in the batterer's intervention course, anger management training, other parenting education programs, and individual counseling. Mother also argues she poses no safety risk because her overnight visits with the child were successful and because the half-siblings have already been returned to her care.

6

Mother misunderstands the nature of substantial evidence review. Under this standard, we do not analyze whether the juvenile court could have reached a different factual conclusion based on the evidence in the record. Rather, we only look at whether the court's decision is supported by substantial evidence. "'If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.'" (*Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th 138, 143, italics omitted.) Further, we do "not reweigh the evidence, evaluate the credibility of witnesses or indulge in inferences contrary to the findings of the trial court. [Citations.] The substantial evidence standard of review is generally considered the most difficult standard of review to meet, as it should be, because it is not the function of the reviewing court to determine the facts." *(In re Michael G.* (2012) 203 Cal.App.4th 580, 589.)

Here we do not review the evidence favoring Mother to determine whether the juvenile court could have found that joint legal custody was in the child's best interest. Rather, we only review whether there is substantial evidence supporting the court's finding that awarding Father sole legal custody was in the child's best interest. That standard is met. There is no dispute Father had sole legal and physical custody prior to the initiation of this dependency case. Under Father's care, all of the child's needs were met. The child was healthy, happy, felt safe and comfortable in her home, had good grades at school, and was involved in extracurricular activities. In other words, there is substantial evidence the child was thriving under Father's sole custody and, as such, maintaining that arrangement was in her best interest.

Further, from the record, Mother and Father have been divorced for several years. It is unclear when Mother last had any legal responsibility for the child's welfare. From the cited portions of the record, it is unclear how much Mother knows about the child's health, education, and interests. Thus, the juvenile court could reasonably conclude that allowing Mother control of such decisions was not in the child's best interests.

Finally, at the time of the disposition hearing, it had been less than three months since SSA had filed the application. While Mother's progress during the dependency case is commendable, she has a nearly 10-year history of domestic violence with J.G. that has included multiple restraining orders and arrests. When balancing this long history against the short span of the dependency case, the juvenile court could reasonably conclude there was still a risk that Mother would expose the child to another domestic violence incident. Thus, it was not in the child's best interests for Mother to have joint legal custody of her. Rather, the court could reasonably find the child's well-being was best served by remaining in Father's sole custody.

## DISPOSITION

The juvenile court's order granting Father sole legal and physical custody is affirmed.

MOORE, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

DELANEY, J.