Filed 7/11/14  Rodrigues v. Ironwood Management CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ANGEL RODRIGUES et al., | B247616 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC426244) |
| v. | |
| IRONWOOD MANAGEMENT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James R. Dunn, Judge.  Affirmed in part; reversed in part.

Righetti Glugoski, Matthew Righetti and John Glugoski for Plaintiffs and Appellants.

Law Office of Stephen F. McAndrew and Stephen F. McAndrew for Defendant and Respondent.

\* \* \* \* \* \*

This appeal follows a court trial on a single bifurcated issue: whether releases signed by employee plaintiffs in a lawsuit claiming unpaid overtime wages were valid. It is undisputed that those releases were valid if—at the time they were signed—the employer and employees had a bona fide dispute as to wages owed the employees. We conclude substantial evidence supported the trial court's conclusion that there was a bona fide dispute over wages due employees who may have falsified their timesheets. We find no substantial evidence supported a bona fide dispute as to the remaining employees. We therefore affirm in part and reverse in part the judgment in favor of the employer.

**FACTS AND PROCEDURE**

*1. The Parties and the Litigation*

Respondent Ironwood Management (Ironwood) is a property management company. Appellants Angel Rodrigues and Carlos Lopez are former employees of Ironwood and sued Ironwood on their behalf and on behalf of all others similarly situated former employees. The parties agree that there are 47 former employees of Ironwood similarly situated to Rodrigues and Lopez vis-à-vis the overtime dispute.

Apparently 46 employees (the putative class less three persons) signed releases with Ironwood shortly after the litigation was filed. The releases provide: "It was the intent and understanding of the all [*sic*] parties that Releasor was in fact working for Other Entities even though the paycheck came through Ironwood's payroll and inasmuch fully understood that any hours worked for the Other Entities, even if they resulted in Releasor working over 8 hours in a day and/or over 40 hours in a week were not subject to overtime requirements because the work was done for the Other Entities and not for Ironwood." The releases further state that "[a] preliminary review of timesheets and time records submitted by Releasor erroneously show that Releasor worked on Ironwood projects and the Other Entities' projects at the exact same time and may have been double paid for those hours."

The release described Ironwood's position on the bona fide dispute as follows: "Releasor is aware that under California law . . . the parties may settle any claim Releasor might have if Ironwood has paid Releasor all wages that Ironwood agrees are due to

2

Releasor and there is a bona fide (genuine or real) dispute that Ironwood owes Releasor any other wages. Before filing the class action complaint, Releasor had not made a demand for unpaid compensation. Releasor and Ironwood agree there are no wages concededly due to Releasor and that, because the Plaintiff in the class action alleges that there are unpaid wages to all hourly paid construction employees, there is a bona fide dispute regarding whether there are any wages due to Releasor."

## 2. *The Bifurcated Trial on the Validity of the Releases*

In its answer, Ironwood alleged that plaintiffs released any purported cause of action.

The court bifurcated the issue of the validity of the releases and held a court trial on whether there was a bona fide dispute at the time the releases were signed. The trial concerned the "bona fide dispute only."

Notice was sent to class members indicating that the court ordered a trial "of the limited issue of whether the Settlement and Release Agreements were supported by a bona fide dispute sufficient to support a settlement and release of wage claims." Notice indicated that plaintiffs who do not opt out would be bound by all orders and judgments in the current lawsuit and would not be able to sue over the same claims.

### a. *Identity of Employer*

The principal dispute at trial was whether employees worked for Ironwood or for other entities.[1] With respect to that dispute the parties stipulated to the following facts: "1. The timesheets for all the class members said Ironwood on them. [¶] 2. The paychecks given to the class members said Ironwood on them. [¶] 3. The W-2s for the class members identified Ironwood as the employer. [¶] 4. Class members received two separate W-2s at the end of the year, each of which identified Ironwood in the employer section. [¶] 5. Class members worked eight hours a day, and on some days worked an additional four hours. On the days that class members worked the additional four hours, they were paid for those hours at regular rates rather than overtime rates." Named

---

[1]     Trial followed an unsuccessful motion for summary judgment.

3

plaintiffs Carlos Lopez and Angel Rodrigues testified that they were never informed they were working for an entity other than Ironwood.[2]

b. *Irregularities on Timesheets*

Scott Williams, a member of Ironwood Velvet, which conducted business at Ironwood Management, testified at trial. He reviewed the employees' timesheets. At least nine different signatures appeared on Angel Rodrigues's timesheets. Carlos Lopez's timesheets reflected at least five different signatures. Antonio Rodriguez's timesheets contained at least eight different signatures. Rodriguez had two timesheets indicating he worked eight hours at two different projects on the same day. Williams testified that Victor Lopez, Edwin Munoz, and Jose Francisco Espinoza, also had different signatures on their timesheets. Williams confirmed with another employee that some employees would sign the timesheets for each other. Williams further testified that Angel Rodriguez was overpaid because he was paid a higher rate than he should have been on one project. Based on his review of timesheets, Williams believed that no wages were owed and that some employees had been overpaid.

3. *Judgment*

The court entered judgment in favor of Ironwood. The court set forth the basis for its decision in its tentative ruling and statement of decision. The court found it was objectively unreasonable for Ironwood to believe other entities employed appellants during the afternoon shift. It rejected that basis for a bona fide dispute. The court

---

[2]     Ironwood's accountant testified that Ironwood simply processed payroll for other companies. Scott Ehrlich, a real estate developer, testified that different companies other than Ironwood employed appellants (because appellants requested additional work), and appellants were informed prior to taking on the additional work that they would not be paid at overtime rates. Raul Mendoza, a former Ironwood employee who was not a member of the class, testified that he was told the afternoon work was for entities other than Ironwood. Although Ironwood relies heavily on the foregoing testimony, the court found the testimony unpersuasive based on the parties' stipulation that the appellants' paychecks and W-2's indicated Ironwood as the employer. The court stated an "employer cannot transmute [its] role as employer into that of a mere payroll processor, based simply on an oral agreement, with no written documentation or other formalities."

however found a bona fide dispute as to the amount of wages due because of the irregularities in some of the employees' timesheets. "The court finds that defendant has prove[n] by a preponderance of the evidence that there was indeed a bona fide dispute as to the amount of wages due." The court credited Williams's testimony that there were timesheets with forged signatures for Angel Rodrigues, Antonio Rodriguez, Carlos Lopez, Victor Lopez, Edwin Munoz, and Jose Francisco Espinoza. There were other discrepancies in Angel Rodrigues's wages.

The court entered judgment in favor of Ironwood.

## DISCUSSION

"'When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. *If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion*.' [Citation.] The substantial evidence standard of review is applicable to appeals from both jury and nonjury trials." (*Jameson v. Five Feet Restaurant, Inc*. (2003) 107 Cal.App.4th 138, 143.)

We conclude that substantial evidence supported the trial court's finding that there was a bona fide dispute between Ironwood and the following employees: Angel Rodrigues, Antonio Rodriguez, Carlos Lopez, Victor Lopez, Edwin Munoz, and Jose Francisco Espinoza. The record, however, contains no evidence supporting the finding that there was a bona fide dispute as to wages owed the other employees. Finally, we conclude the court erred in entering judgment against employees who did not sign releases because the only issue at trial was whether the releases signed by employees were valid.

*1. An Employer Must Pay All Wages Concededly Due and May Settle a Claim Only If There Is a Bona Fide Dispute As to Wages Due*

Labor Code section 206.5, subdivision (a) provides:  "An employer shall not require the execution of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made.  A release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee.  Violation of this section by the employer is a misdemeanor."

An employer and employee may compromise a bona fide dispute over wages after wages concededly due have been paid.  (*Chindarah v. Pick Up Stix, Inc*. (2009) 171 Cal.App.4th 796, 800, 803 (*Chindarah*).)  In *Chindarah*, class action plaintiffs alleged that the employer misclassified their jobs as exempt from overtime pay.  (*Id*. at p. 798.)  Two hundred employees accepted a settlement and signed a general release.  (*Ibid*.)  Eight of the employees who had signed releases sought to join the class action lawsuit against their employer.  (*Id*. at p. 798, fn. 1.)  The trial court concluded the releases were valid because the employer presented evidence that a good faith dispute existed with regard to the classification of employees and there was a triable issue as to whether employees were owed any additional wages.  (*Id*. at p. 799.)  The appellate court affirmed, concluding that no statute prevents an employee from releasing "his claim to past overtime wages as part of a settlement of a bona fide dispute over those wages."  (*Id*. at p. 803.)  Thus the judgment in favor of the employer as to the eight employees who had signed releases and sought to join the class was affirmed.  (See *id.* at p. 798, fn. 1.)

Subsequently, *Watkins v. Wachovia Corp.* (2009) 172 Cal.App.4th 1576 (*Watkins*) applied *Chindarah*.  In *Watkins* one employee in a purported class signed a release of all of her claims in exchange for a severance package.  (*Watkins*, at pp. 1581, 1586.)  The court held that "[w]hen a bona fide dispute exists, the disputed amounts are not 'due,' and the bona fide dispute can be voluntarily settled with a release and a payment—even if the payment is for an amount less than the total wages claimed by the employee."  (*Watkins, supra*, 172 Cal.App.4th at p. 1587.)  The following evidence demonstrated a bona fide

dispute with the employee: "When [plaintiff's] employment was terminated, she (1) received all wages Wachovia conceded were due to her (based on the time sheets she had submitted); (2) believed she possessed a claim for further overtime pay; and (3) voluntarily elected to receive enhanced severance benefits in exchange for releasing her claims against" her employer. (*Id*. at p. 1587; see also *Aleman v. Airtouch Cellular* (2012) 209 Cal.App.4th 556, 578 [applying *Watkins*].) *Chindarah* and *Watkins* hold that a release is valid if it is part of a settlement of a bona fide dispute over wages owed and neither party disputes that this is the dispositive question for this appeal.

## 2. There Was a Bona Fide Dispute As to Wages Owed to Angel Rodrigues, Antonio Rodriguez, Carlos Lopez, Victor Lopez, Edwin Munoz, and Jose Francisco Espinoza

Applying *Chindarah* and *Watkins* here, the trial court properly entered judgment against those employees with whom Ironwood had a bona fide dispute as to wages owed—the employees who had irregularities in their timesheets, suggesting that they had been paid for time they did not work. Like the employee in *Watkins* who signed a release, these employees with whom Ironwood had a bona fide dispute as to wages could voluntarily settle their claims. Like the eight employees in *Chindarah* with whom the employer had a bona fide dispute regarding the classification, the releases signed by employees with whom Ironwood had a bona fide dispute were valid. The court credited Williams's testimony, and it is not the province of this court to reweigh the evidence. (*Jameson v. Five Feet Restaurant, Inc., supra*, 107 Cal.App.4th at p. 143.)

Appellants' argument that Ironwood is simply relying on its own malfeasance lacks merit. The evidence indicates that Ironwood trusted its employees to accurately complete timesheets and compensated employees based on the time reported on those timesheets. Placing trust in employees to accurately report time is not Ironwood's malfeasance. Contrary to appellants' argument the judgment did not rest on Ironwood's

7

faulty record keeping, but instead on a dispute as to wages due following apparent misrepresentations on timesheets.**3**

### 3. Judgment Should Not Have Been Entered with Respect to the Remaining Employees

But the court erred insofar as it entered judgment against the remaining employees. The court found Ironwood was the employer for the overtime hours worked and that Ironwood could not reasonably believe otherwise. Thus the court negated the alleged bona fide dispute applicable to all plaintiffs who signed releases, leaving the bona fide dispute to only those employees with timesheet irregularities. This case therefore is distinguishable from *Chindarah* in which the court found a reasonable dispute as to a classification—which applied to all of the workers who had signed releases.

The remaining dispute concerning timesheets was an individual, not a group issue. "The granting of class certification . . . requires a determination that group, rather than individual, issues predominate. Such a finding, however, does not preclude the consideration of individual issues at trial when those issues legitimately touch upon relevant aspects of the case being litigated." (*Duran v. U.S. Bank Nat. Assn.* (2014) 59 Cal.4th 1, 28.) The existence of a release is an affirmative defense (*Baker v. Ferrel* (1947) 78 Cal.App.2d 578, 579) that required individual consideration with respect to each employee. Although an affirmative defense may be available against a whole class, here it was available only against individual class members because it affected different class members differently. (Cf. *Walsh v. IKON Office Solutions, Inc.* (2007) 148 Cal.App.4th 1440, 1450 [affirmative defense may be specific to each plaintiff].) The timesheet irregularities were employee specific and did not apply to all employees. For

---

**3** Appellants' reliance on *Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721 is misplaced because that case did not involve litigation over a bona fide dispute. *Hernandez* holds that "[o]nce an employee shows that he performed work for which he was not paid, the *fact* of damage is certain; the only uncertainty is the *amount* of damage." (*Id*. at p. 726.) Here, the issue at trial was not on damages but rather concerned whether the releases were valid.

example, evidence that Carlos Lopez may have falsified his timesheets is not probative of whether other employees falsified their timesheets. Ironwood failed to establish its affirmative defense of release as to the employees for whom no evidence of irregular timesheets had been presented.[4]

Finally, the judgment must be reversed as to those employees who did not sign releases. The only issue at trial was whether the releases signed were valid. Employees who did not sign releases obviously had no valid release.

## DISPOSITION

The judgment is affirmed as to Angel Rodrigues, Antonio Rodriguez, Carlos Lopez, Victor Lopez, Edwin Munoz, and Jose Francisco Espinoza. As to all other appellants, the judgment is reversed. The parties shall bear their own costs on appeal.

FLIER, J.

WE CONCUR:

RUBIN, Acting P. J.

GRIMES, J.

---

[4]    Ironwood argues that appellants conceded that the bona fide dispute applied to all workers. Ironwood's citation to the record, however, identifies no concession that the issue of falsification of timesheets applied to all workers. When appellants sought class certification, they defined the bona fide dispute as follows: "the bona fide dispute is that Defendant claims it was not the employer for the hours worked in excess of 8 in day. Plaintiffs and the class allege Defendant was in fact the employer the entire day."

9